[No. 301. Decided December 9, 1891.]

FRANK PAUL, *Respondent*, v. JOHN H. McGRAW AND LESTER TURNER, *Appellants*.

[No. 302. Decided December 9, 1891.]

FRANK PAUL, *Respondent*, v. JACOB FURTH, *Appellant*.

MANDAMUS—TAXATION—NATIONAL BANKS—ASSESSMENT.

*Mandamus* will lie in a state court to compel the officers of a national bank to exhibit to a county assessor a list of names and residences of all shareholders in the bank, with the number of their shares, as required by § 5210, Rev. St. U. S.

The absence of state legislation empowering some taxing officer to make demand upon national bank officers for a list of shares and shareholders does not render § 5210, Rev. St. U. S., inoperative.

Where the officers of a national bank have furnished the county assessor a statement giving the amount of its paid-up capital stock, the amount of surplus or reserve fund, and the amount of undivided profits, together with the amount invested in real estate, as required by § 21, Laws 1891, p. 289, *mandamus* will not lie to compel such bank officers to furnish the assessor with a list of stockholders, and the number of their shares and par value thereof, directed to be exhibited by § 5210, Rev. St. U. S., as such lists are not necessary for making a proper assessment of the shares of capital stock.

*Appeal from Superior Court, King County.*

The facts in this case are stated in the opinion.

*Preston, Carr & Preston,* for appellants.
*John F Miller,* and *Andrews & Barnes,* for respondents.

The opinion of the court was delivered by

STILES, J.—The appellants in these two cases are officers of the First National Bank and of the Puget Sound National Bank, of Seattle, respectively. The respondent is the assessor of King county, who, in pursuance of his duties in listing property for taxation in his county, in the month of June last, demanded of the appellants an inspection of a full and correct list of the names and residences of all the shareholders of said banks, and the number of shares held by each shareholder, together with such information as the said officers had at their command as to the value, or tending to show the value, of said shares of stock. The assessor's demand was refused, whereupon he procured from the superior court of King county an alternative writ of *mandamus,* requiring the bank officers to furnish the desired lists of shareholders. The respondents to the writs duly appeared, and after making a motion to dismiss the proceeding for want of jurisdiction in the court, which motion was denied, and after demurring to

the application on the grounds of want of jurisdiction, and that the application did not state sufficient facts, which demurrer was overruled, they answered, admitting the plaintiff's allegations concerning the banks' incorporation, but denying the facts which were alleged as tending to show the necessity the plaintiff was under to obtain the desired information from them; and further, that at a time in the year 1891, and within the time provided by law for listing property for taxation, in response to a demand of the plaintiff therefor, they had furnished to plaintiff a statement, verified by oath, giving the amount of paid up capital stock, the amount of surplus or reserved fund, and the amount of the undivided profits of said banks. The court found the facts to be as pleaded in the application, and also found that the affirmative matter pleaded by the respondents was true; and that they had in all respects complied with the requirements of § 21 of the act of March 9th, 1891—the general revenue law; but it found as a matter of law that the respondents must furnish the list of shareholders, and made the writs peremptory. These appeals are from the final judgments thus rendered.

Writs of *mandamus* can be issued only in cases where the law specially enjoins the performance of an act as a duty resulting from an office, trust or station; and then only where there is no other plain and adequate remedy. Code of 1881, § 691. The respondent contends that under the letter of § 5210 of the Revised Statutes of the United States, the appellants were in duty bound to give him inspection of the lists, as demanded. Sec. 5210 is as follows:

"The president and cashier of every national banking association shall cause to be kept at all times a full and correct list of the names and residences of all the shareholders in the association, and the number of shares held by each, in the office where its business is transacted. Such list shall be subject to the inspection of all the shareholders and creditors of the association, *and the officers authorized*

*to assess taxes under state authority,* during business hours
of each day in which business may be legally transacted."

It was, therefore, the appellants' legal duty to exhibit
the lists if it was necessary to the prosecution of respond-
ent's official labors in making assessments.  At this point,
however, the appellants raise objection that they are, with
respect to this duty, officers of the United States, and there-
fore not subject to *mandamus* by state courts.  No author-
ity is cited for this position, and we do not admit it.  In
our judgment they are simply officers of the banking asso-
ciation, with whom the United States has no relations what-
ever, except as limited by the acts of congress.

It is next claimed that inasmuch as § 5210 has not been
supplemented by legislation of the state empowering some
taxing officer to make the demand, it is inoperative, espe-
cially in view of the alleged scheme to tax the capital,
surplus and undivided profits, found in §§ 8 and 21 of the
act of 1891 (Laws 1891, p. 280).  By the territorial reve-
nue law (Code of 1881, § 2849), it was provided that the
principal accounting officer of each banking association
should list the shares of the association, giving the assessor
the name of each person owning shares, and the amount
owned by each.  The foregoing provision was repealed by
the revenue act of March 28, 1890 (Laws 1889-90, p. 530),
and the latter act required the accounting officers of all
banks to furnish to the assessor verified statements showing
the amount and number of the shares of the capital stock
of their banks, the amount of their surplus or reserve
funds, and the amount of their legally authorized invest-
ments in real estate.  Again, the act of 1890 was repealed
by the act of 1891, but the act of 1891 contained substan-
tially the same provision as that cited above from the act
of 1890, with the exception that the paid-up capital, the
surplus or reserve fund, and the amount of undivided profits
are to be declared.  It thus appears that under the act of

1891 there is no law on the statute books of the state supplementing § 5210, and if the power to enforce the demand of the assessor existed at all it must be conferred by the act of congress alone, and the appellants' claim is so far well founded. Was it, then, necessary that there should be state legislation before the assessor could avail himself of the list required to be exhibited by § 5210? As conclusive authority upon this point, we are cited to the case of *Waite v. Dowley,* 94 U. S. 527. Speaking of a statute of the state of Vermont, which required the cashiers of national as well as other banks to transmit to the clerks of the several towns of the state in which any stockholder of such bank should reside a true list of the names of such stockholders, together with the amount of money actually paid in on each share on the first day of April of each year, the court said, in answer to the argument that the action of congress was final, and could not be supplemented by the states:

" The act of congress, however, was merely designed to furnish to the public dealing with the bank a knowledge of the names of its corporators, and to what extent they might be relied on as giving safety to dealing with the bank. It had no such purpose as the Vermont statute, and was wholly deficient in the information needed for the purposes of taxation by the state, as conceded to it by the act of congress itself. Some legislation of Vermont was, therefore, necessary to the proper exercise of the rightful powers of the state, and so far as it required this list, was not in conflict with any provision of the act of congress."

It will be observed that this case does not hold that the town clerks of Vermont could not have availed themselves of the list provided for by the act of congress for whatever it was worth, and when the court said it was "necessary to the proper exercise of the rightful powers of the state" that there should be further legislation, we construe the meaning to have been that because by a literal compliance with

§ 5210 but little of real value to the taxing officers would be learned by them; further, state legislation was both necessary and proper in order that not only the names of the stockholders and the amount of their respective holdings might be known, but that the value of each share might be authoritatively fixed. We hold, therefore, that the point above discussed is not well taken. Nor do we think that the absence of an express statutory direction to the assessor to procure these lists would defeat his right to them under the view of the act of 1891 urged upon our consideration by the appellants, viz.: That it was the design of the act to tax the shares in the hands of the stockholders, and the capital, surplus and profits in the hands of the banks; for the bare lists required to be exhibited by the act of congress would aid him very materially in discovering who the stockholders are and where they reside.

Under these holdings, then, did the state court have jurisdiction of the subject-matter of the proceeding? Clearly we think the answer must be in the affirmative. The fourth subdivision of § 5136, Rev. St. U. S., in defining the powers of national banking associations, declares that they shall have power—

"To sue and be sued, complain and defend, in any court of law and equity, as fully as natural persons."

And § 5198 expressly provides that suits, actions and proceedings may be had against these associations in any state, county or municipal court in the county or city where they are located, such courts having state jurisdiction in similar cases. Certainly if the corporation can be sued, its officers may be. We find but two instances in all of the sections of the Revised Statutes where a proceeding relating to these banks is required to be in a federal court, viz., §§ 5237 and 5239, where the government is itself dealing with them; and in § 5234 the receiver of a national bank, appointed by the comptroller of the currency, is au-

thorized to sell an insolvent bank's real estate upon the order of "a court of record of competent jurisdiction." which designation in a United States statute the federal supreme court has said means "of course, the state courts." *Claflin v. Houseman*, 93 U. S. 130. A reading of the learned opinion of Justice BRADLEY in this case must conclusively settle this question. See also *Casey v. Adams*, 102 U. S. 66; *Bank of Bethel v. Pahquioque Bank*, 14 Wall. 383.

There remains to be considered only the question whether, under the views so far expressed, the facts conceded and the law made these proper cases for *mandamus*. If the inspection of the lists were necessary to his official work it would follow that these are such cases, as we think the assessor had no other plain and adequate remedy. But this question of necessity requires some further examination of the laws governing national banks and the revenue laws of this state.

Sec. 5219, Rev. St. U. S., is as follows:

"Nothing herein shall prevent all the shares in any association from being included in the valuation of the personal property of the owner or holder of such shares in assessing taxes imposed by authority of the state within which the association is located, but the legislature of each state may determine and direct the manner and place of taxing all the shares of national banking associations located within the state, subject only to the two restrictions that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state, and that the shares of any national banking association owned by non-residents of any state shall be taxed in the city or town where the bank is located, and not elsewhere. Nothing herein shall be construed to exempt the real property of associations from either state, county or municipal taxes, to the same extent, according to its value, as other real property is taxed."

This section has been construed over and over again, by

the United States supreme court, to prohibit the taxation of the capital of a national bank, as such, to the bank itself. *Van Allen v. Assessors*, 3 Wall. 573; *People v. Commissioners*, 4 Wall. 244; *Bradley v. People*, 4 Wall. 459; *National Bank v. Commonwealth*, 9 Wall. 353; *Lionberger v. Rouse*, 9 Wall. 468; *Hepburn v. School Directors*, 23 Wall. 480; *People v. Commiss'oner of Taxes*, 94 U. S. 415. And it has been just as often and in the same cases held that the shares of stock may be taxed as the property of the stockholders, notwithstanding that a part or all of the bank's capital may be invested in securities of the government. The manner and place of taxing the shares are left to the state legislature, it being optional whether they be taxed to the several resident owners at the places of their residence, or at the place where the bank is located. Non-resident owners must be taxed at the *situs* of the bank.

Two methods have been recognized by which the taxes thus levied may be collected. The first is the ordinary way of assessing the stock to the individual holder, and collecting the amount levied as other personal taxes are collected. The second is one which, for a time, met strenuous opposition from the national banks, but which has been sustained by the courts, and is now quite general. It is to assess the entire stock of each bank to the holders thereof at the place where the bank is located, and to collect the amount levied from the bank, which is then at liberty to charge up the tax paid to the account of the stockholders, *pro rata*, either as an item of expense or otherwise. This plan received elaborate consideration in the supreme court of the United States, in *National Bank v. Commonwealth*, 9 Wall. 353, where it was sustained upon the theory that the bank is treated as a garnishee of the stockholders who are indebted to the state in the amount of their taxes. Section 2849 of the Code of 1881 was

constructed upon the plan above outlined, though it required the names of stockholders to be given, and presumably the assessments were made to them severally, the collection, however, being made from the bank. Again, in 1890, the revenue law of that year (§ 22) provided for almost precisely the same scheme as that of the code. In that law, however, the language was:

"The stockholders of every bank located within the state shall be assessed and taxed upon the value of their shares."

The accounting officer of each bank was then required to furnish a verified statement showing the number of shares, their amount, the amount of the surplus or reserve, and the amount legally invested in real estate; but he was not required to give stockholders' names. Presumably, in that year an assessment of fifteen hundred shares of the capital stock of the First National Bank of Seattle to the unknown owners thereof would have been a valid assessment, and the tax could have been collected from the bank. Coming now to the act of 1891, we find the law rewritten, and some unfortunate and confusing language used. This language, it is contended by the appellants, has had the lamentable effect of relieving the shares of the national banks of the state from all taxation, and therefore the entire moneyed interest represented by them, since the banks themselves cannot lawfully be taxed in the manner proposed by the act. Sec. 8 requires every person who is a resident of the state to list to the assessor all his shares of stock, and its value must be given as of April 1. Sec. 16 provides the form for the detail list of personal property, and in its twenty-fourth subdivision appears, "Shares of bank stock (including state and national)." These and other provisions of this act, as well as § 1, art. 7 of the constitution, requiring all property to be taxed, the respondent insists, show the intention of the legislature to be to assess

the shares of each bank shareholder to him, and that this
is the method to follow which the lists are required from
the appellants. Appellants on the other hand say that
notwithstanding the portions of the act alluded to, it is
clear that § 21 contains the specific law applicable to banks
and bank shares, and that to hold with the respondent
would be to say that the legislature deliberately proposed
to tax the same property twice, and one of the methods
adopted for doing so was to tax the capital, which is pro-
hibited by the acts of congress. Respondent expressly
admits that any attempt to tax the capital of these banks
would be unlawful, and that any legislation of that kind
would be void; and we have seen from the cases cited from
the United States supreme court, that unless shares of the
state banks are taxed, those of national banks cannot be.
So that, if we construe § 21 literally and alone, the stock
of national banks must escape altogether. We think we
see a clear way to harmonize the provisions of this statute
so that all can stand. Secs. 21 and 23 of the act are as
follows:

"SEC. 21. Every individual, firm, corporation or asso-
ciation of persons carrying on a general banking business·
in this state, whether the same has been organized under
the banking laws of this state or of the United States, or·
conducted under the style of private bankers, shall be
assessed and taxed in the county, town, city or village
where such bank or banking association is located, and not
elsewhere, in the following manner: Annually, at such
times as provided for listing property for taxation, every
such bank or banking association as contemplated in this
section shall, by its accounting officer, furnish the county
or city assessor a statement, verified by oath, giving the
amount of paid up capital stock, the amount of surplus or
reserve fund and the amount of undivided profits of such
bank or banking association. The aggregate amount of
capital, surplus and undivided profits shall be assessed and
taxed as other like property in this state is assessed and

20—3 WASH.

taxed: *Provided,* At the time of listing the capital stock, the amount and description of its legally authorized investments in real estate shall be assessed and taxed as other real estate is assessed and taxed under this act, and the assessor shall deduct the amount of such investments in real estate from the aggregate amount of such capital, surplus and undivided profits, and the remainder then taxed as above provided."

"SEC. 23. Each bank and banking association shall be liable to pay any taxes assessed against them as the agent of each of its shareholders, owners or owner, under the provisions of this act, and may pay the same out of their undivided profit account, or charge the same to their expense account, or to the accounts of such shareholders, owners or owner, in proportion to the ownership."

Were it not for § 23, we confess that it would be extremely difficult to make anything like a harmonious disposition of the various portions of this act relating to taxation of banks. But a few words will suffice to make the matter clear. We know that the legislature must have had in mind: (1) That the capital of national banks could not be taxed at all. (2) That the shares of such banks could be taxed, provided that the shares of state banks were taxed, and at the same rates as state bank shares and other moneyed capital. (3) That the shares of non-residents of the state could only be taxed at the place where the bank is located. (4) That while all the property in the state is required to be taxed, it can only be taxed once. (5) That the very easiest and simplest way to collect the tax on property of this kind is by the garnishment method, approved in *National Bank v. Commonwealth, sup, a,* and actually in operation in the state and territory for many years.

Then we have the provision of § 21, that the assessment and taxation shall be in the county, town, city or village where the banking association is located, and not elsewhere. (If it were here intended that the capital should be taxed,

where would be the necessity for this restrictive language, when under the ordinary rules of assessment the place of the bank would be the place of assessment?) Manifestly this requirement annuls the provisions of §§ 8 and 16 for the listing of bank stocks, since, obviously, the only purpose of this listing is to enable a tax to be levied, and if the resident of one county, who owns the stock of a bank located in another, list his stock in the county of his residence, it will be taxed there; and if the respondent's contention is correct, and he obtains the list demanded from the bank's officers, he will cause the very same stock to be again assessed and taxed in the county where the bank is located. Suppose, now, that in this instance every stockholder of these banks resides out of and has no property in King county, how shall the tax be collected? Plainly by a resort to § 23. But could it be contended for a moment that a resident of King county may be required to list his shares, and pay his own taxes upon them, while his fellow stockholders who reside elsewhere may have their taxes paid out of the funds of the bank and charged up to general expenses? We think not; but that the purpose of the law is to tax all the stock at the place where the bank is, and to furnish an ample, uniform and easy method of collecting the tax upon the whole from the bank as garnishee. When it has all been thus collected, it would be just as between the stockholders to charge the total sum paid to expenses, but not till then. This must be the intention, or the provisions of § 21, affecting national banks, are void; whereas, with such conceded to be the intention, we can regard the listing required in that section as part of the machinery set up for the convenience of the assessor in making a just assessment of the stock, which is all that can be assessed.

Now, it was found by the court below that the appellants had, before the application for writs of mandate, upon the

demand of the respondent, furnished to him the statements required by § 21, which in all respects complied with that section. Where, then, with these statements in his possession, was the necessity that the respondent should be furnished the lists provided for in § 5210? He knew the names of the banks, the number of shares, the par value of the shares (by law $100 each), the amount paid up, the surplus or reserve fund, the undivided profits, and the amount legally invested in real estate. What more was requisite for a good assessment of ·the shares? Not the names of stockholders, and especially not the lists directed to be exhibited by § 5210, since the respondent did not make his demand until the 24th day of June. Assessments must be made as of April 1st, at 12 o'clock noon, not as of June 24th. But the act of congress requires the list of stockholders to be kept revised from day to day, so that had these lists been furnished, they would possibly not have shown the name of a single person who was a stockholder on the first day of April, and an assessment based upon them might have been all wrong.

Upon the whole case, therefore, we hold that the writs should have been refused, and this holding requires a reversal of the cases, and it is so ordered.

Anders, C. J., and Hoyt, Dunbar and Scott, JJ., concur.