In the Matter of the Application of ROLAND B. MOLINEUX,
    Appellant, for a Peremptory Writ of Mandamus against
    CORNELIUS V. COLLINS, as Superintendent of State Prisons,
    Respondent.

MANDAMUS — PHOTOGRAPHS AND MEASUREMENTS TAKEN TO IDENTIFY
CRIMINALS ARE PUBLIC RECORDS WHICH CANNOT BE REMOVED OR
SURRENDERED EXCEPT THROUGH LEGISLATIVE ACTION, ALTHOUGH
PARTIES ARE SUBSEQUENTLY ACQUITTED. · One confined in a state prison
under sentence of death is a "convict" within the meaning of section 40
of chapter 382 of the Laws of 1889, relating to the identification of crimi-
nals, and is a prisoner "received under sentence" within the meaning of
section 1 of chapter 440 of the Laws of 1896, relating to the same subject
(Code Cr. Pro. §§ 491, 507, 508); he is a criminal so long as the sentence
remains in force, and his photograph and measurements made and recorded
as prescribed by the statute are properly made and constitute public
records.   The fact that upon a subsequent trial he is acquitted does not
entitle him to a mandamus to compel the superintendent of state prisons
to remove such records and deliver them to him, since they are beyond
the control of that officer except for preservation and use, and it would
be an usurpation of power for him to surrender them or for the court
to direct him to do so.   The legislature only can grant such relief and to
that body alone should application therefor be made.
    *Matter of Molineux* v. *Collins,* 88 App. Div. 618, affirmed.

    (Argued February 8, 1904; decided February 16, 1904.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the third judicial department, made Decem-
ber 3, 1903, which affirmed an order of Special Term denying
a motion for a peremptory writ of mandamus to compel the
defendant to deliver certain photographs and measurements in
his custody to the petitioner.

    The facts, so far as material, are stated in the opinion.

    *Robert G. Scherer* and *J. Murray Downs* for appellant.
There is no authority of law for taking the photograph or
measuring a person condemned to death. (*Delafield* v.
*Brady,* 108 N. Y. 524; *L. S. & M. S. R. R. Co.* v. *Roach,*
80 N. Y. 339; *Parker* v. *E. C. M. R. R. Co.,* 165 N. Y.
279; *People ex rel.* v. *Davenport,* 91 N. Y. 585; *Spencer* v.
*Myers,* 73 Hun, 278; 150 N. Y. 269; *Schleissner* v. *Schleiss-*

*ner*, 72 App. Div. 492.) Mandamus is the proper remedy. (*People* v. *Mayor, etc.*, 10 Wend. 395; *People ex rel.* v. *N. Y. C. & H. R. R. R. Co.*, 168 N. Y. 187; *People ex rel.* v. *Coler*, 34 App. Div. 167; *People* v. *Bd. of Assessors*, 44 Barb. 148.)

*John Cunneen, Attorney-General* (*Sanford T. Church* on the brief), for respondent. Mandamus is not the proper remedy for the relief sought. (*People* v. *Parmenter*, 158 N. Y. 390; *Harris* v. *Commissioners*, 149 N. Y. 30; *McMackin* v. *Board of Police*, 107 N. Y. 235; *People ex rel.* v. *Rupp*, 90 Hun, 145; *People ex rel.* v. *Collier*, 175 N. Y. 196; *Joyce* v. *York*, 27 Misc. Rep. 658; *Robertson* v. *R. P. B. Co.*, 171 N. Y. 538.) Defendant acted in accordance with the law. (L. 1896, ch. 440; Code Crim. Pro. § 491; *Owen* v. *Police Comrs.*, 40 Misc. Rep. 415; *Bruns* v. *Clausmeier*, 154 Ind. 599.)

VANN, J. On the 16th of February, 1900, the appellant, Roland B. Molineux, was adjudged guilty of murder in the first degree and sentence of death was pronounced against him. A warrant was at once issued to the warden of the state prison at Sing Sing commanding him to keep the said Molineux in solitary confinement until the time appointed for his execution and to then put him to death in the manner provided by law. Before that time arrived enforcement of the sentence was stayed by the service of a notice of appeal to this court, which afterward reversed the judgment of conviction and ordered a new trial. The second trial resulted in an acquittal. During his imprisonment at Sing Sing a photograph was taken of Molineux and he was measured according to the Bertillon system under the direction of the warden, who forwarded the negative, photograph and measurements to the superintendent of state prisons at Albany, in whose office they have ever since remained as part of a collection which embraces similar data relating to criminals who have been lawfully convicted under the laws of the state.

Upon an affidavit setting forth these facts and alleging that said Molineux was unlawfully convicted, that the photograph

was taken and measurements made against his wishes and without his consent, and that he is thus held out as a lawfully convicted criminal, a motion was made at Special Term for a peremptory writ of mandamus commanding the superintendent of state prisons " to remove the plates, photographs and measurements * * * from the records of his office and deliver the same to the said Roland B. Molineux." The motion was denied and upon appeal to the Appellate Division the order was unanimously affirmed " as a matter of law and not in the exercise of discretion." By an appeal to this court from the order of the Appellate Division the question of power to issue the writ is now before us for decision.

The Code of Criminal Procedure provides that when a death warrant is delivered to the agent and warden of a state prison he is required to keep the defendant named therein " in solitary confinement at the said state prison" until the infliction of the punishment of death upon him or he is lawfully discharged.   (§ 491.)

By the Prison Law the superintendent of state prisons is authorized to " make rules and regulations for a record of photographs and other means of identifying each convict received into said prisons."   (L. 1889, ch. 382, § 40.)

By an act passed in 1896, " to facilitate the identification of criminals," the superintendent of state prisons is required to " cause the prisoners in the state prisons therein confined at the time this act takes effect, and all prisoners thereinafter received under sentence, to be measured and described in accordance with the system commonly known as the Bertillon system for the identification of criminals."   He is also required to " prescribe rules and regulations for keeping accurate records of such measurements at such prisons and in duplicate at his office in Albany and for classifying and indexing the same." (L. 1896, ch. 440, § 1.)

The appellant claims that neither of the acts authorizing these methods of identification applied to him, because he was not a " convict" within the meaning of the earlier, nor a prisoner "received under sentence," within the meaning of the

later. The Criminal Code, however, expressly refers to a prisoner confined in state prison under sentence of death as a "convict" and requires the warden to keep him "in solitary confinement at said state prison," during the definite period which must elapse before execution, and, in case an appeal is taken, during the indefinite period which may elapse until it is decided. (Code Cr. Pro. §§ 491, 507, 508.) The object of the legislature, as expressed in the title of the act of 1896, was "to facilitate the identification of criminals," so as to aid in retaking a prisoner after an escape. A prisoner under sentence of death is a criminal in the eye of the law so long as the sentence remains in force, because he has been adjudged guilty of a crime. As he may escape, the same as a convict whose only sentence is to imprisonment, he comes within the spirit of the law. He also comes within the letter, because he is "received under sentence" and "solitary confinement at said state prison" is a part of the sentence imposed by command of the statute. The legislature did not intend that those imprisoned for the most serious crime known to the law, even for safekeeping and during a short period, should be exempt from the general rule designed to facilitate the recapture of escaped prisoners.

The measurements and record, therefore, were made by authority of law and became the property of the state, which paid "the necessary expenses incurred" for the purpose. (L. 1896, ch. 440, § 2.) They were public records and were beyond the control of the superintendent of prisons, except for preservation and use. He had no power to destroy them or give them away, or surrender them even to one who, although under judgment of death when they were made, was finally adjudged not guilty. The custodian of a public record cannot deface it or give it up, without authority from the same source which required it to be made. The statute directed the superintendent to make the record, and when he made it the state made it, and it has not authorized him to destroy it under any circumstances, not even to relieve a citizen from an unjust reflection upon his character.

It would be usurpation of power for him to surrender the record or for the court to direct him to do so.   If the position of the defendant is sound, where is the destruction of public records to end ?   What may become of the indictment, the minutes of the clerk recording the verdict of guilty and the judgment of conviction ?   May the death warrant be withdrawn from the custody of the warden, although it is the only authority he had for the imprisonment of Molineux, while he was awaiting execution ?   Even the courts, which have control of their own records, do not direct one made through error to be physically destroyed, although they vacate it and direct that it shall be held for naught.   Our order of reversal and the judgment acquitting the defendant are public records, open to the inspection of all, which neutralize every legal presumption against him arising from the judgment of conviction.

While the courts can command the superintendent of prisons to do his duty, it is not his duty to give up a record made under the authority of a statute, and until the legislature makes it his duty to surrender the record in question it should remain in his custody, because the state put it there and has not authorized its removal.   An innocent man accused of crime is sometimes compelled to make sacrifice and undergo suffering for the benefit of society.   Like payment of taxes and service upon juries, it is part of the price paid for the privilege of living in a country governed by law.   One, for the good of all, may be required to submit to imprisonment, incur expense and endure mental distress, because the state cannot exist without the preservation of order, and order cannot be preserved without the puishment of the guilty, which necessarily involves, sometimes, the trial of the innocent.   There is no relief for this apparent injustice except through the legislature and to that body alone the appellant should look for relief from the annoyance of which he now complains.

The order appealed from should be affirmed, with costs.

PARKER, Ch. J., GRAY, O'BRIEN, HAIGHT, MARTIN and CULLEN, JJ., concur.

Order affirmed.