[No. 12687.  Department Two.  August 11, 1915.]

WILLIAM R. HODGEMAN, *Appellant*, v. DONALD B. OLSEN, *Superintendent State Reformatory, Respondent*.[1]

EVIDENCE—JUDICIAL NOTICE.  Judicial notice will be taken of the custom of penal institutions to take and preserve photographs and measurements of prisoners.

REFORMATORIES — REGULATION — IDENTIFICATION OF PRISONERS — POWERS OF MANAGERS—STATUTES.  The legislature, by outlining, in broad and general terms (Rem. & Bal. Code, § 8577 *et seq.*), the powers and duties of the board of managers of the state reformatory, without any complete system of specific rules or regulations, has by necessary implication accorded to the officers all those powers which experience has proven necessary, with a wide latitude of discretion; including the power to take and preserve, and send to police officers elsewhere, in good faith, photographs and physical measurements of prisoners, in order to prevent escape and to facilitate recapture, reformation, and the investigation of past records required by statute, and as an aid in enforcing the habitual criminal law.

INJUNCTION—RELIEF—PAST INJURY.  It not being the function of an injunction to correct past injuries, injunction does not lie to compel the destruction of photographs taken of a convict, in the absence of an allegation that the defendant is now threatening to make wrongful use of the same.

REFORMATORIES—REGULATION — IDENTIFICATION — RIGHTS OF PRISONERS.  When the board of directors of the state reformatory had the power to take and preserve photographs and measurements of prisoners, the taking of the same by their superintendent in charge invades no legal right, although the managers had made no rules or regulations authorizing the same.

MANDAMUS—WHEN LIES—RIGHT.  Mandamus only issues against an officer in his official capacity to compel the performance of a duty imposed by law pertaining to his office; hence does not lie to compel the destruction of photographs rightfully taken of prisoners of a reformatory, in the absence of any statute therefor.

CONSTITUTIONAL LAW—CIVIL RIGHTS—RIGHT OF PRIVACY — CONVICTS.  The relation of the public to one convicted of crime is such as to forfeit whatever right of privacy the convict may have had with reference to the publication of his photograph, so far as protection to the public is concerned.

[1]Reported in 150 Pac. 1122.

Appeal from a judgment of the superior court for Snohomish county, Alston, J., entered October 24, 1914, upon sustaining a demurrer to the complaint, dismissing an action to compel the destruction of certain photographs and to enjoin the retention and distribution thereof, tried to the court. Affirmed.

*Blair & Blinn,* for appellant.

*The Attorney General* and *L. L. Thompson,* for respondent.

ELLIS, J.—In this action the plaintiff seeks to compel the destruction of certain pictures held by the defendant as superintendent of the state reformatory at Monroe, and to enjoin their retention and circulation.

It is alleged that the plaintiff was convicted of grand larceny and sentenced to serve a term of not less than two nor more than fifteen years in the reformatory; that he began serving his term in January, 1912, was paroled in February, 1913, and was granted a full pardon by the governor in January, 1914; that, when he was received at the reformatory, he was compelled by the officers in charge, and against his consent, to submit to the taking of two photographs of himself; and again, on his discharge, to submit to the taking of two other photographs; that the officers in charge of the institution indorsed on the photographs a physical description of plaintiff, including his age, weight, height, color of hair and eyes, and such other information as is usually used in the description of convicts confined in the state penitentiary; that the negative plates of these photographs, with a number of pictures produced therefrom and the indorsements thereon, are in the possession of the defendant as superintendent of the reformatory, and are kept by him as a part of the public records of the institution, open to the inspection of its employees and to others generally; that the defendant and employees of the institution under him, at

divers times since the plaintiff's pardon, have sent copies of these photographs and the information indorsed thereon to the police department of the city of Vancouver, British Columbia, and to various cities in the state of Washington, causing the plaintiff great humiliation and embarrassing him in his business, and otherwise causing him to suffer irreparable damage; that the board of managers have not by any rule provided for the taking, keeping or circulation of such photographs, and the same is unwarranted by any law of this state.  The defendant demurred to the complaint upon two grounds: (1) insufficiency of facts; (2) lack of jurisdiction in the court of the subject-matter.  The demurrer was sustained.  The plaintiff abiding his pleading, the action was dismissed.  He appeals.

Passing, for the nonce, the question of jurisdiction, let us inquire whether the facts stated show any invasion of a legal right.  It is conceded that there is no statutory provision expressly authorizing the taking and preservation of photographs of inmates of the state reformatory, but it is urged that this power arises by necessary implication from those expressly conferred.  The statute, 2 Rem. & Bal. Code, Title LXVIII, chapter 5, governing the creation and management of the state reformatory, so far as bearing upon the question here involved, contains provisions as follows:

Section 8577 vests in the board of managers the "general charge and supervision" of the reformatory.

Section 8580 empowers the board to appoint as superintendent a person of "the executive ability essential for the proper management of the officers and other employees under his jurisdiction and to enforce and maintain proper discipline in every department."

Section 8590 reads:

"The board of managers shall have the power to make all rules and regulations necessary and proper for the employment, discipline, instruction, education and removal of all prisoners of said Washington state reformatory."

Section 8593 provides:

"It shall be the duty of said board of managers to maintain such control over all prisoners committed to their custody, as shall prevent them from committing crime, best secure their self support and accomplish their reformation. When any prisoner shall be received into the Washington state reformatory upon direct sentence thereto, they shall cause to be entered in a register the date of said admission, the name, age, nativity and nationality, with such facts as can be ascertained of parentage, or early education and social influences as seem to indicate the constitutional defects and tendencies of the prisoner, and the best probable plan of treatment. Upon such register shall be entered quarterly, or oftener, minutes of observed improvement or deterioration of character, affecting the standing or situation of such prisoner, the circumstances of the final release and any subsequent facts of the personal history which may be brought to their knowledge."

It is manifest from these provisions, and indeed from the entire statute, that the legislature has made no attempt to lay down a complete system of specific rules and regulations for the management of the institution or the care and treatment of the inmates, but has only undertaken to outline the powers and duties of the board of managers and superintendent in the broadest of terms. It is obvious that, if these officers were required to look to the statute for specific rules of conduct, they would find none. They would be powerless to inaugurate any adequate system for carrying out the general powers conferred or performing the duties so broadly imposed. The legislature has deemed it inexpedient to attempt any promulgation of specific rules, doubtless because of their necessary manifold scope and because to do so would, on the principle *expressio unius exclusio alterius*, deny to the officers in charge the power to employ those means which practical experience might demonstrate as best calculated to meet the full purpose of the law. It would be practically impossible to enumerate in the statute all of the powers necessary to the management of such an institution

and the control of its inmates. By conferring general powers and imposing general duties, the legislature has, by necessary implication, accorded to the officers in charge all those powers which experience has proven necessary and such as are customarily employed in the management of penal institutions. In this connection we call attention to the fact that the legislature has been little more specific in promulgating rules for the penitentiary than it has for the reformatory. (2 Rem. & Bal. Code, Title LXVIII, ch. 2.) In both statutes there is left, by necessary implication, a wide latitude of discretionary power to the officers in charge.

It is a matter of common knowledge, of which this court cannot feign ignorance, that the taking and preservation of photographs, physical measurements and characteristics of prisoners is a measure adopted in nearly all penal institutions. This is not only necessary in order to facilitate the recapture of escaped prisoners and the investigation of their past records and personal history, expressly made incumbent by the reformatory statute, but is also necessary to preserve the means of identification for that future supervision after discharge which, by the very theory of reformatory restraint, is assumed by the state for the prisoner's good, as it is for the protection of society in all cases of prisoners discharged from any penal institution whether reformatory or not. The protection of society, whether by reformation or punishment, is the real end in any case. As an aid to the enforcement of our habitual criminal law, the preservation of such data is an obvious necessity. The legislature is also presumed to have had this common knowledge when it passed the reformatory act. By failing to prohibit these commonly employed measures and by imposing general duties to which their use is plainly an appropriate aid, it has, by implication, conferred upon the officers in charge the power to continue their use as a part of the ordinary powers of management. Had such measures been deemed inimical to the benign purpose of the reformatory law, as is strenuously as-

serted by the appellant, the legislature would certainly have so declared.

This implied power is supported by ample authority. In Freund, Police Power, p. 102, § 103, we find the following:

"Measures which in their effect reach beyond the term of imprisonment are often especially authorized by statute. This is especially true of processes serving the purpose of identification; the taking of measurements and photographs, copies of which are distributed among other penal institutions and police offices. Since these are appropriate means of making escape more difficult, and of facilitating the recapture of an escaped convict, they may perhaps be regarded as implied in the ordinary powers of management; in a considerable number of states they have, however, in recent years, been made the subject of special statutory enactment."

In *Owen v. Partridge*, 40 Misc. Rep. 415, 82 N. Y. Supp. 248, the court, sustaining the right of the police department of New-York City to take and exhibit the photograph of a common gambler who had been arrested but not yet convicted, as implied from the express power to "preserve the public peace, prevent crime, detect and arrest offenders" said:

"The first point to be considered is, have the plaintiff's rights been invaded? The acts of the defendant's predecessor in office, so far as this plaintiff is concerned, and the defendant's continuance of them by preserving, exhibiting, or circulating the photograph and measurements, can obviously be justified only as an exercise of the police power. The duty of the police, always existing and reaffirmed by the charter (Laws 1901, p. 136, c. 466, § 315) to 'preserve the public peace, prevent crime, detect and arrest offenders,' gives them necessarily a wide range of incidental powers to accomplish the mandate of the statute. The existence of the so-called rogues' gallery, and the taking of photographs, weights, and measurements, finds its authority, if anywhere, in this provision, or in the accepted pre-existing principles of which it is the expression. So far as habitual criminals are concerned—their supervision and control—no serious question could well be raised as to the propriety or legal character of the acts involved."

So, also, in *Shaffer v. United States*, 24 App. D. C. 417, the taking against his will, and use in evidence against him, of a photograph of one accused of crime was held lawful. The court said:

"In taking and using the photographic picture there was no violation of any constitutional right. There is no pretense that there was any excessive force or illegal duress employed by the officer in taking the picture. We know that it is the daily practice of the police officers and detectives of crime to use photographic pictures for the discovery and identification of criminals, and that, without such means, many criminals would escape detection or identification. It could as well be contended that a prisoner could lawfully refuse to allow himself to be seen, while in prison, by a witness brought to identify him, or that he could rightfully refuse to uncover himself, or to remove a mark (mask), in court, to enable witnesses to identify him as the party accused as that he could rightfully refuse to allow an officer, in whose custody he remained, to set an instrument and take his likeness for purposes of proof and identification. It is one of the usual means employed in the police service of the country, and it would be matter of regret to have its use unduly restricted upon any fanciful theory or constitutional privilege."

We refrain from further quotation, but call attention to the following cases equally explicit in affirming the implied police power to take, preserve and make reasonable use of such photographs and data for the identification of persons convicted of crime, and even of persons accused of crime but not yet convicted. *Downs v. Swann*, 111 Md. 53, 73 Atl. 653, 134 Am. St. 586, 23 L. R. A. (N. S.) 739; *State ex rel. Bruns v. Clausmeier*, 154 Ind. 599, 57 N. E. 541, 77 Am. St. 511, 50 L. R. A. 73; *People ex rel. Joyce v. York*, 27 Misc. Rep. 658, 59 N. Y. Supp. 418.

We find it unnecessary to go so far as some of these cases go. We do not hold that any official has the implied power to take and retain the picture and measurements of persons merely accused of crime. That question is not before us. We do hold that those charged with the custody of persons who

have been convicted of crime and incarcerated in our penal institutions have the implied power to take such pictures, descriptive measurements and data, and to retain them for reasonable future use in the detection, apprehension and identification of criminals, and to that end may send such pictures and data to police officers elsewhere in the state when so requested in good faith.

The only decision cited by the appellant touching the real question here is that of the supreme court of Louisiana in *Itzkovitch v. Whitaker*, 117 La. 708, 42 South. 228, 116 Am. St. 215, in which the threatened taking and placing in the rogues' gallery of the picture of one merely accused but not convicted of crime was held properly enjoined. The right, however, in case of a convicted criminal was not questioned. A similar opinion from the same court is presented in *Schulman v. Whitaker*, 117 La. 704, 42 South. 227, 7 L. R. A. (N. S.) 274, but the court adds:

"Whilst expressing the foregoing views, we desire to have it well understood that we are decidedly of opinion that cases may arise justifying the officer in charge of the police department in ordering a picture to be taken; but the necessity must be evident.

"Convicts and hardened criminals may forfeit all rights to consideration, to such an extent, at any rate, that their pictures may be taken if necessary to their identification, and that without much delay.

"The gallery in question should not be broken up; the collection in other cases should remain as it is, although there is no special statute on the subject.

"Law and right have the authority to protect themselves."

This is a clear recognition of all that we hold here.

Existing the implied power to take these pictures and measurements and to retain them for the purposes mentioned, it follows as of course that the facts pleaded show no invasion by the respondent of any legal right of the appellant. As pointed out in the respondent's brief, if we held otherwise it might, with equal reason, be said that persons pardoned

are entitled to have the records of their conviction and sentence delivered up for destruction lest they might serve to inform the world of the pardoned criminal's past disgrace. The allegation in the complaint of what the appellant conceives to be a past wrongful or abusive use of these pictures, even if the allegation be held sufficient to show such abusive use, is beside the mark. That fact would offer no valid reason for the issuance of a mandate for the destruction of data held under the implied authority of law as a proper part of the records of the institution for a rightful use. Nor does it furnish any ground for the injunction sought. It is not the function of injunction to correct past injuries. 1 High, Injunctions, p. 38.

There is no allegation in the complaint that the respondent is now *threatening* to make any use of these pictures, either wrongful or rightful. Since, as we have found, these pictures have been rightfully taken and may be legally held and sent to police officers in this state, when this is done in good faith to aid in the apprehension or identification of criminals, the courts will not enjoin such use to allay the fear of an illegal use which it is not alleged is now threatened. 1 High, Injunctions, p. 37. The alleged fact that the board of managers has made no rule or order authorizing the taking of these pictures is immaterial. Since that board has the power to make such an order, the taking of the pictures by their subordinate in charge, the superintendent, invaded no right of the appellant. We are of the opinion, in any event, that the taking of these pictures was an administrative act within the discretion of the superintendent, in the absence of any statute or rule of the managers prohibiting such action.

Owing to the importance of the principle involved, we have thought it expedient to dispose of the case upon its merits, without regard to the power of the court to grant the particular relief sought. We shall notice this last question but briefly.

The relief sought is of a two-fold nature; mandatory, in that it is asked that the pictures and indorsed data be surrendered for destruction, and injunctive, in that it is asked the respondent be restrained from distributing these pictures to any person or persons.

From what has already been said, it is plain that the court had no jurisdiction to grant the mandate sought. The pictures having been taken under an implied authority of law, and being held as a part of the records of the institution, there is no legal duty on the respondent to destroy them, in the absence of a statute imposing that duty. There is no such statute. The action is brought against respondent in his official capacity. Mandamus will only issue against an officer in his official capacity to compel the performance of a duty imposed by law as resulting from or pertaining to his office. *State ex rel. Rogers v. Jenkins*, 21 Wash. 364, 58 Pac. 217; *Paul v. McGraw*, 3 Wash. 296, 28 Pac. 532. For cases so holding on cognate facts see: *People ex rel. Joyce v. York, supra; Gow v. Bingham*, 57 Misc. Rep. 66, 107 N. Y. Supp. 1011; *Molineux v. Collins*, 177 N. Y. 395, 69 N. E. 727, 65 L. R. A. 104.

Whether, in any case or on any state of facts, the court would have the power to grant injunctive relief prohibiting the circulation of these pictures, is a more difficult question, but one which we find it unnecessary to decide. It is clear that their distribution to duly constituted police officers and other penal institutions cannot be enjoined. That is one of the purposes of the keeping of such records. As we have seen in our discussion of the merits of the complaint, such distribution is justifiable as a reasonable police measure for the protection of society. The right of privacy, upon which the appellant insists, if it has any existence in this state, is not invaded by such distribution. As intimated in the last paragraph of the opinion in *Hillman v. Star Publishing Co.*, 64 Wash. 691, 117 Pac. 594, 35 L. R. A. (N. S.) 595, the relation to the public of one who has been convicted of crime

is such as to forfeit whatever right of privacy he may be said to have ever possessed. This is true, at least, to the extent that the protection of society requires such forfeiture. See *Molineux v. Collins, supra.* But it does not follow that a wanton distribution of these pictures to persons other than police officers and the like, and for no other purpose than to harass a pardoned criminal and injure him in his business, might not constitute a wrong, an excess of official duty or privilege, for which some remedy might be found. Such, however, is not the case before us. No such wanton or malicious excess of authority is averred, nor any threat of such excess. We think there can hardly be a difference of opinion that no court has jurisdiction to enjoin legal official action where no excess or abuse of authority is threatened.

The judgment is affirmed.

MORRIS, C. J., FULLERTON, CROW, and CHADWICK, JJ., concur.