[No. 13638.   Department One.   November 22, 1916.]

THE STATE OF WASHINGTON, *on the Relation of G. L. Twiss,
Plaintiff,* v. THE SUPERIOR COURT FOR LEWIS COUNTY
*et al., Respondents.*[1]

EMINENT DOMAIN—COMPENSATION BEFORE TAKING—WAIVER—IN-
JUNCTION—REMEDY IN DAMAGES.  Where by consent entry upon land
was made for the construction of a railroad under a verbal agree-
ment as to the compensation, and the grade was completed and the
right of way fenced off, with no steps taken to recover possession
for two years, the owner waived his constitutional right to compen-
sation in advance; hence injunction does not lie to restrain further
work until compensation is made, but the owner is relegated to his
action in damages.

Certiorari to review an order of the superior  court  for
Lewis county, Rice, J., entered August 18, 1916, dissolving
a temporary restraining order, after a hearing before the
court.   Affirmed.

*C. A. Studebaker,* for relator.

*Forney & Ponder,* for respondents.

ELLIS, J.—Certiorari to review an order of the superior
court of Lewis county dissolving a temporary  restraining
order.   From the return it appears that relator is, and at
all times material to this inquiry was, the owner of the south
half of the southwest quarter and the southwest quarter of
the southeast quarter of section 26, township 13 north, range
1 east, W. M., in Lewis county.   In the spring of 1914, rela-
tor and the Washington Electric Railway Company, a public
service corporation organized under the laws of this state,
entered into a verbal agreement whereby that company was
to be permitted to construct its grade and tracks and to
operate its trains across relator's lands upon a right of way
thirty-five feet wide extending along the north line of the

[1]Reported in 161 Pac. 68.

westerly eighty acres above described, and seventy feet wide extending diagonally in a southeasterly direction through the easterly forty acres above described. It was admitted in argument that the thirty-five foot right of way across the first mentioned tract was to be donated free of cost to the electric company, and that the seventy foot right of way across the easterly forty acres was to be paid for at a price to be agreed upon between the parties. The agreement was conditioned upon the construction of the road so as to be ready for the regular operation of trains within sixteen months. In June, 1914, the electric company entered upon the lands with relator's permission, and thereafter, with relator's knowledge, consent and acquiescence, constructed the grade for its road on the north thirty-five feet of the eighty-acre tract and across the easterly forty, and fenced and ditched the right of way throughout its extent across both tracts. Three written agreements were prepared at different times, two by the electric company and one by relator, but each side rejected each writing as prepared by the other, claiming that it did not conform to the oral agreement.

It is claimed that, in the construction of its grade, the electric company deviated from the right of way as proposed and agreed upon at a point near where it passed from the eighty-acre tract onto the easterly forty, but it is admitted that this deviation was slight, being possibly about forty feet. It appears that some objection was then made by relator, but whether after the grade was completed or before does not appear. No proceeding of any kind has ever been brought to forfeit the easement for the right of way because of the failure of the company to construct the road within the time agreed upon. After the grade was completed, the electric company ceased work upon its line and nothing further was done until the spring of 1916, when it conveyed its line to respondent Chehalis, Cowlitz & Cascade Railway, which it seems to be assumed is also a public service corporation. In June, 1916, respondent began leveling the grade across re-

lator's land for the imposition of ties and rails.  In August, 1916, relator brought an action to enjoin respondent from proceeding with the work, and claiming $200 damages for the work already done.  A temporary restraining order was issued.  Respondent moved to dissolve this restraining order and, upon a hearing, the trial court granted the motion, the order being conditioned upon respondent's filing a bond of $500, or cash in lieu of bond in that sum, as security for any damages which relator might recover.  Respondent deposited $500 in court and proceeded with the work of laying its track, whereupon relator instituted this proceeding.  It is admitted that the deposit of $500 will be amply sufficient to cover all damages which relator may suffer by reason of the taking of his lands for a right of way.

Relator rests upon the elementary proposition that, under our constitution, private property cannot be taken for a public use without just compensation first being ascertained and paid.  He relies upon *State ex rel. Smith v. Superior Court*, 26 Wash. 278, 66 Pac. 385.  The court there had under review an order which permitted the defendant to damage private property and substituted a bond for the damages which the constitution declares must be assessed and paid in advance.  It was therefore properly held that an unconditional injunction should have been granted.  But it does not follow from that decision that the right to compensation in advance may not be waived and the property owner thereafter relegated to his remedy in damages.  In *Kaufman v. Tacoma, Olympia & G. H. R. Co.*, 11 Wash. 632, 40 Pac. 137, this court said:

"The charter provided that before private property should be taken or damaged, the damages should be ascertained and paid, and the constitutional provision aforesaid was to the same effect.  This was not done, but the respondents saw fit to allow the work to proceed without attempting to restrain the performance of it, or to recover damages prior to its completion, and thus waived payment in advance and were confined to their right to bring an action to recover."

In *Kakeldy v. Columbia & Puget Sound R. Co.*, 37 Wash. 675, 80 Pac. 205, this court said:

"An owner of land who stands by and without protest sees a railroad constructed thereon, is estopped thereafter to maintain an action in ejectment, or a suit for injunction, to prevent the operation of the road. His remedy is limited to an action for damages for his compensation."

In the case before us, respondent's predecessor in interest, the electric company, entered upon the relator's land in 1914 with his full consent and under a verbal contract. The relation of the parties was purely contractual. The right of way as now occupied by respondent was then fenced throughout. The grade for the road was fully completed across all of the relator's land. It is true relator claimed that there was a slight deviation at one point from the line as agreed upon and that he did not know of this at the time, but it is admitted that he did know of it in 1914 at about the time the grade was completed. Though he then objected he took no steps to recover the land, and the electric company and the respondent here, as its successor, have been in possession ever since. From the negotiations then and thereafter had, even down to a letter written by relator G. L. Twiss on May 31, 1916, it is clear that relator was not objecting so much to this slight deviation as to the amount of compensation offered by respondent and its predecessor. We are clear that, under the foregoing decisions, relator has waived his right to compensation in advance for the taking and is relegated to his action in damages. Moreover, whatever damages can ever be caused by the building of respondent's road were inflicted in 1914, when the grade was constructed and ditched and the right of way fenced. "It is not the function of injunction to correct past injuries." *Hodgeman v. Olsen*, 86 Wash. 615, 150 Pac. 1122, L. R. A. 1916A 739; 1 High, Injunctions, p. 38.

The order under review is affirmed.

MORRIS, C. J., MAIN, PARKER, and CHADWICK, JJ., concur.