*410 OPINION OF THE COURT
Donald J. Sullivan, J.
On May 28, 1977, the defendant was arrested and charged with the murder of Philip Di Stefano, which event occurred on May 1, 1977 in the presence of an eyewitness, Joseph Aiello. The defendant moves to suppress the identification testimony emanating from the photographic and lineup procedures conducted by the police. Defendant claims that his statutory rights to the return of his photograph pursuant to CPL 160.50 were violated and accordingly the display of his photograph in the photographic array conducted on May 19, 1977 tainted the photo identification and subsequent lineup identification made by the eyewitness. The issues are twofold: (1) whether there has been a violation of CPL 160.50, and (2) whether the violation of the statute rises to constitutional dimensions mandating the invocation of the constitutionally derived, judicially expressed, exclusionary rule so as to suppress the entire identification testimony as being the "fruit of the poisonous tree” (Wong Sun v United States, 371 US 471). The court finds no violation of CPL 160.50 and that no constitutional rights of the defendant were infringed.
The underlying facts as disclosed at the Wade hearing indicate that on January 1, 1977, defendant was arrested and charged with the crime of robbery. At that time, pursuant to the standard arrest procedures, he was photographed and fingerprinted. The proceeding against defendant was dismissed on January 29, 1977 for failure to prosecute. Pursuant to the defendant’s motion under CPL 160.50, on April 14, 1977, Judge Herbert Shapiro ordered the photographs of the defendant to be returned to him forthwith and other records to be forthwith sealed. Thereafter on May 19, 1977 the police, while conducting a homicide investigation, displayed a photograph of the defendant to the eyewitness, Joseph Aiello, at a photo array. The eyewitness identified the defendant as the perpetrator of the homicide. It is conceded by the People that said photograph appearing in the photo array was the photograph which was the subject of Judge Shapiro's order of April 14, 1977. Based on that selection, the defendant was placed in a corporeal lineup and again identified by the eyewitness as the perpetrator of the crime. The defendant does not seriously dispute the propriety of the police procedure except for the use of the challenged photo. Nor does he contest the legality of the original taking of the photograph. The defendant argues *411 however, that the photograph was thereafter retained unlawfully by the police in that they failed to timely comply with the court order; and that such statutory violation tainted the entire identification procedure conducted by the sovereign.
It has been clearly established that a defendant has no inherent or constitutional right to the return of any photographs, fingerprints or other indicia of an arrest where the charges are dismissed. This principle was established as early as 1904, when the Court of Appeals held in Matter of Molineux v Collins (177 NY 395), that a defendant who had been convicted and imprisoned and then later exonerated did not have any right to the return of photographs. In Herschel v Dyra (365 F2d 17, 20, cert den 385 US 973) the court said "the retention of fingerprints and other arrest records by the police even after discharge, does not violate any constitutional 'right of privacy’ of the accused.” Whatever relief that flowed from the dismissal were those decreed by the Legislature. (See, also, People v Casella, 90 Misc 2d 442; Matter of Troilo v Valentine, 179 Misc 954.)
Such remedy is statutorily mandated in New York by CPL 160.50 which became effective in September of 1976 (L 1976, ch 877, as amd by L 1977, chs 835, 905). Its predecessors were section 79-e of the Civil Rights Law and section 516 of the Penal Law of 1909 (repealed by section 500.05 of the Penal Law; L 1965, 1046, § 1, eff Sept. 1, 1967). These forerunner statutes did not provide for the sealing of records, now required by CPL 160.50. Concomitantly with the enactment of CPL 160.50, two new related sections were added — CPL 160.60 and subdivision 14 of section 296 of the Executive Law.
CPL 160.50 requires in essence, pursuant to court order, the sealing of records and the return of photographs and similar documents to an accused upon the favorable termination of a criminal action. The pertinent provision as it relates to the instant case is, "(a) every photograph of such person and photographic plate or proof, and all palmprints and fingerprints taken or made of such person pursuant to the provisions of this article in regard to the action or proceeding terminated * * * shall forthwith be returned to such person, or to the attorney who represented him at the time of the termination of the action or proceeding”. (CPL 160.50, subd 1; emphasis supplied.)
The broad and general purpose of the statute as evidenced by its language, the statements of the Governor and the *412 legislators-sponsors is to protect the rights of privacy and enhance the fundamental principles of the "presumption of innocence” of an accused. The provisions of the statute directing the forthwith return of photos, with certain "interests of justice” exceptions, should be read in conjunction with CPL 160.60 and subdivision 14 of section 296 of the Executive Law. A rational and logical reading of these sections shows it was designed to place a successful defendant in the same position that he occupied prior to his arrest. A compelling force for the enactment of the legislation was the removal of the "deleterious effect of arrest records on citizens’ ” reputations (United States v Schnitzer, 567 F2d 536, 539). The statutory scheme was intended to remove the "stigma” of the alleged criminal activity and its adverse affect on an accused, thereby affording protection to such accused in the pursuit of employment, education, professional licensing and insurance opportunities. (See Menard v Mitchell, 430 F2d 486.) It was never intended to immunize a defendant from the operation of a law enforcement official’s investigatory display of a photograph, albeit in contravention of statute.
It was stipulated at the hearing that the police department regularly employed 35 people to seal the records, of which there is a continuous backlog of 100,000 orders made pursuant to CPL 160.50, and that it takes two to three months to comply with such orders.
Defendant argues that the failure to remove the photograph from the police files and return it forthwith to the defendant as required by statute and the court order of April 14, 1977 tainted the entire identification procedure. At the outset it is necessary to ascertain the meaning of the terminology "forthwith” set forth in the statute. The word "forthwith” as interpreted by decisional law means not only immediately but " 'within a reasonable time and with reasonable dispatch’ ” (Howland v Giorgetti, 26 Misc 2d 77, 79). Likewise, the word "immediately” has been liberally construed to mean "promptly, within a reasonable time, or with reasonable diligence, dependent upon the circumstances in each case” (People v Blanda, 80 Misc 2d 79, 83). It has been defined in Black’s Law Dictionary, fourth edition, as: "Immediately; without delay, directly, hence within a reasonable time under the circumstances of the case; promptly and with reasonable dispatch. [Citation omitted.] Within such time as to permit that which is to be done, to be done lawfully and according to *413 the practical and ordinary course of things to be performed or accomplished * * * [t]he first opportunity offered.” This court does not agree with the defendant’s interpretation that the term forthwith is to be equated with instantaneous delivery of the photograph. The statutory provisions are purely remedial in nature providing a procedural device to insure the return and sealing of photographs and other like documents and records. A rational reading of the statute dictates that compliance should be measured by whether the governmental agency returned the photograph and sealed the records within a reasonable amount of time and in a reasonable manner. Here the order to return and seal was signed by the court on April 14, 1977. The challenged photograph was shown to the eyewitness on May 19, 1977 at which time a positive identification was made. The defendant was arrested on May 29, 1977 and a corporeal lineup was conducted on June 6, 1977 whereupon defendant was again identified. The cogent evidence adduced at the hearing is devoid of any proof of bad faith, deliberate or intentional withholding of the photograph on the part of the police officials. The record does not indicate any untoward effort by the police in exhibiting the photograph as a tactical maneuver to circumvent the purpose of the statute. The court is of the opinion that the approximately five-week interval between the court order of April 14, 1977 and the police display of the photo on May 19, 1977 was a reasonable period within which the sovereign could comply with the court order. The court thus finds under the circumstances in this case no violation of the court order, thus negating any taint in the identification procedures. The protection afforded by statute was the barring of inquiry by State officials in such areas as employment concerning prior arrest. In balancing the individual’s and societal needs it would seem in this case that the scales of justice should tip in favor of the public interest in investigating criminal activity against the minimal invasion of one’s privacy and "its detrimental impact upon the truth-finding process.” (People v McGrath, 46 NY2d 12, 19.)
Assuming arguendo, that the possession of the photograph on May 19, 1977 was statutorily unlawful, the court would nevertheless find that the identification emanating from the "illegal” photograph would not be suppressed. The research of counsel and court have failed to find any New York decisions interpreting the precise issue. It may be instructive to examine the treatment of other jurisdictions on this issue. *414 Consider for example the various court holdings as to the restraints, if any, imposed upon the practices of public agency regarding the maintenance and dissemination of arrest records of persons who were never convicted of the crime for which they were arrested. (United States v Schnitzer, 567 F2d 536, supra; Utz v Cullinane, 520 F2d 467; Menard v Saxbe, 498 F2d 1017; Menard v Mitchell, 430 F2d 486 supra; United States v Dooley, 364 F Supp 75; United States v Kalish, 271 F Supp 968; see, also, Davidson v Dill, 180 Col 123; Eddy v Moore, 5 Wash App 334; McGovern v Van Riper, 140 NJ Eq 341.) The most pertinent case on the constitutional issues suggested by the case at bar is Paul v Davis (424 US 693). In Paul, flyers, distributed by the Chief of Police of Louisville, Kentucky, consisted of five pages of names and photographs of persons depicted as "active shoplifters.” Included in the flyer was the name and "mug shot” of Davis, who had never been convicted of any criminal activity and whose only "offense” was having once been arrested on a shoplifting charge. Shortly after the circulation of the flyer, the charges against Davis were dismissed. The Supreme Court held that the distribution of the flyer involved no infringement of Davis’ constitutionally protected rights (Paul v Davis, supra, pp 705-707). By this analysis, this court cannot hold that the mere retention and use of a photograph violative of CPL 160.50, for identification purposes in a homicide investigation, constitutes a denial of a defendant’s due process of law rights guaranteed under the Fifth and Fourteenth Amendments or an abridgement of defendant’s Fourth Amendment rights against an unreasonable search and seizure.
In determining the admissibility of identification testimony the court further notes that the test to be applied is whether "under the totality of circumstances” the identification "possesses sufficient aspects of reliability” even though the confrontation procedure may have been tainted. The harm to be avoided in any identification procedure utilized by the sovereign are those practices that may give rise to " 'a very substantial likelihood of irreparable misidentification’ ” as to amount to a denial of due process of law (Manson v Brathwaite, 432 US 98, 116; see, also, People v Brown, 20 NY2d 238, 244). The Supreme Court, in Manson, by extending the principles first adopted in the Wade-Gilbert-Stovall trilogy (United States v Wade, 388 US 218; Gilbert v California, 388 US 263; Stovall v Denno, 388 US 293) rejected the per se exclusionary *415 rule of a suggestive pretrial photo identification. Instead it propounded the principle that the due process clause of the Fourteenth Amendment does not require suppression if the identification testimony was reliable. Its rationale was that the deterrence of police misconduct could adequately be preserved by the exclusion of unreliable testimony based upon the "totality of circumstances” rule. In light of these principles, the court finds, under the totality of circumstances, even assuming a violation of the statute and that said violation was of constitutional proportions, the photo and lineup identification procedures were not unnecessarily suggestive. The eyewitness testimony was manifestly reliable, trustworthy and therefore admissible, as it was not conducive in any manner to a likelihood of irreparable misidentification. To hold otherwise would be inconsistent with the judicially declared exclusionary rules " 'by making of them mere technical loopholes for the escape of the guilty * * * [as] the people of the State are also entitled to due process of law’.” (Smith v United States, 324 F2d 879, 882; quoting from Stein v New York, 346 US 156, 196-197.)
On a motion to suppress evidence the People "have the burden of going forward to show the legality of the police conduct in the first instance” (People v Whitehurst, 25 NY2d 389, 391; People v Malinsky, 15 NY2d 86). It is the defendant who "must shoulder the burden of persuasion” (People v Di Stefano, 38 NY2d 640, 652). The court finds that the defendant has not sustained his burden of demonstrating an unconstitutional taint of the eyewitness identification.
In addition, this court finds that the witness’ in-court identification was reliable, free from any undue suggestiveness, based on clear and convincing evidence of an independent source and is similarly admissible. (People v Rahming, 26 NY2d 411, 417; United States v Wade, supra; cf. People v Digiosaffatte, 63 AD2d 703.) The eyewitness, Joseph Aiello, was a victim of the crime. His identification of the defendant, in the opinion of this court, resulted more from his mental recall of his encounter with the defendant during the commission of the criminal act than from the viewing of defendant’s photograph. The record is undisputed that the witness had ample opportunity to clearly observe the defendant at "eyeball” distance for a lengthy period of time during their confrontation. Further, the witness’ identification was certain and unequivocal (People v Simms, 58 AD2d 720; People v Velez, 43 *416 AD2d 745; People v Brown, 20 NY2d 238, supra; see, also, Neil v Biggers, 409 US 188). Accordingly, the motion to suppress Joseph Aiello’s pretrial photographic and lineup identification and in-court identification is denied.