Kevin ANDERSON, Plaintiff,

v.

CITY OF NEW YORK, Police Department of the City of New York, Michael Cassidy, Carl Daniels, and Robert McGuire, as Commissioner of Police Department of the City of New York, Defendants.

No. 82 Civ. 5609(CES).

United States District Court, S.D. New York.

May 21, 1985.

Lehrman & Kronick, White Plains, N.Y. (Arnold S. Kronick, White Plains, of counsel), for plaintiff.

F.A.O. Schwarz, Jr., Corp. Counsel, City of New York, New York City, (William L. Barrish, New York City, of counsel), for defendants.

## MEMORANDUM DECISION

STEWART, District Judge:

Plaintiff Kevin Anderson moves for summary judgment against defendants the City of New York ("NYC"), the New York City Police Department ("NYPD"), the Commissioner of the Police Department, Robert McGuire ("the Commissioner") and New York City Police Detectives Michael Cassidy and Carl Daniels. Defendants cross-move for summary judgment on the entire complaint, or alternatively, on behalf of the municipal defendants.

We find that plaintiff has stated a cause of action under 42 U.S.C. § 1983, but is not entitled to summary judgment because of questions of fact. Defendants' motion for summary judgment is denied with respect to the municipal defendants, specifically NYC, NYPD and the Commissioner.[1] Summary judgment is granted, however, on behalf of the individual officers, Cassidy and Daniels.

The background of this case is essentially undisputed. On January 1, 1977, the

---

1. We rely on defendants' designation of the Commissioner as a municipal defendant.

police arrested Anderson for robbery in the second degree.[2] In accordance with the usual procedures, his fingerprints and photographs were taken. The case was dismissed on January 29, 1977 for failure to prosecute. Pursuant to N.Y.Crim. Proc.Law § 160.50[3] ("section 160.50"), Judge Herbert Shapiro signed an order on April 14, 1977, calling for the return of all photographs, negatives, fingerprints and palmprints of the defendant.[4]

The photographs were not returned. On May 19, 1977, while investigating a homicide, the police displayed to a witness a January 1977 photograph of the plaintiff retained in violation of Judge Shapiro's order. The trial judge at Criminal Term, Justice Sullivan, denied suppression of the identification after analysis of the statute requiring the return of the photographs. In interpreting the statutory requirement that materials be returned "forthwith," Justice Sullivan held that "the approximately five week interval between the court order of April 14, 1977 and the police display of the photo on May 19, 1977 was a reasonable period within which the sovereign could comply with the court order." *People v. Anderson,* 97 Misc.2d 408, 413,

411 N.Y.S.2d 830, 834 (Sup.Ct. Bronx County 1978). Given that interpretation, the court found no violation of the court order, nor any "taint in the identification procedures used." *Id.* at 415, 411 N.Y.S.2d at 834. The court went on to express its view that the retention and use of the photograph, even if it had violated the statute, would not have been a denial of due process or an abridgement of any fourth amendment right. Lastly, the court also stated that even if it were to assume a statutory violation of constitutional proportions, the ultimate test for suppression of identification testimony would be whether, under the totality of circumstances, the identification was unnecessarily suggestive. Analyzing the facts surrounding Anderson's identification, the court found "the photo and line-up identification procedures were not unnecessarily suggestive." *Id.* at 415, 411 N.Y.S.2d at 835.

After trial on the homicide charge, Anderson was acquitted by a jury, and Justice Sullivan entered another order pursuant to section 160.50 calling for release of all photographs, negatives, fingerprints and palmprints of the defendant relating to the murder charge. According to plaintiff, the

**2.** Plaintiff states in his motion papers that he was arrested on January 29, 1977. While not crucial to any of our holdings, we note that we have relied on the dates set out in *People v. Anderson,* 97 Misc.2d 408, 411 N.Y.S.2d 830 (Sup.Ct.1978).

**3.** Upon the termination of a criminal action or proceeding against a person in favor of such person, as defined in subdivision two of this section, unless the district attorney upon motion with not less than five days notice to such person or his attorney demonstrates to the satisfaction of the court that the interests of justice require otherwise, or the court on its own motion with not less than five days notice to such person or his attorney determines that the interests of justice require otherwise and states the reasons for such determination on the record, the court wherein such criminal action or proceeding was terminated shall enter an order, which shall immediately be served by the clerk of the court upon the commissioner of the division of criminal justice services and upon the heads of all police departments and other law enforcement agencies having copies thereof, directing that:

  (a) every photograph of such person and photographic plate or proof, and all palmprints

and fingerprints taken or made of such person pursuant to the provisions of this article in regard to the action or proceeding terminated ... and all duplicates and copies thereof shall forthwith be returned to such person, or to the attorney who represented him at the time of the termination of the action or proceeding, at the address given by such person or attorney during the action or proceeding, by the division of criminal justice services and by any police department or law enforcement agency having any such photograph, photographic plate or proof, palmprint or fingerprints in its possession or under its control.

**4.** According to *People v. Anderson, supra,* 97 Misc.2d 408, 411 N.Y.S.2d 830, Judge Shapiro's order of April 14, 1977 calling for the release of all photographs, negatives, fingerprints and palmprints of the defendant was upon defendant's motion. We note that N.Y.Crim.Proc.Law § 160.50 does not require such a motion, however, unless the criminal action or proceeding against the person seeking release was terminated in favor of such person *prior to the effective date of the section.* Such is not the case here.

City has complied with this second expungement order. During the course of the 1977 murder proceedings, some fingerprints, photographs and negatives from the January 1977 robbery arrest were returned to the attorney who had represented Anderson at his robbery trial. Those photographs were forwarded to Mr. Kronick, Anderson's present attorney, who also represented him with respect to the 1977 murder charge. The Assistant District Attorney in charge of the 1977 murder prosecution also acknowledged that the City had complied with Justice Shapiro's order regarding the photographs taken in connection with the 1977 robbery charge.

Nonetheless, on June 11, 1981, while investigating a robbery and attempted murder, Detectives Cassidy and Daniels displayed one of the January 1977 photographs to two witnesses, Tamika White and Leola Gray. Plaintiff contends that as a result of that display, he was placed in a line-up on June 14 and identified by Ms. Gray as the perpetrator of the robbery under investigation. Ms. White viewed the same line-up, but could not make a positive identification. Moments later, however, saying that she had made a mistake and had been scared, she identified plaintiff. Anderson was arrested and taken into custody.

In a *Wade* hearing in connection with this trial, the court denied suppression of the line-up identification of the defendant by White and Gray, as well as their subsequent in-court identification. *See People v. Anderson,* Indictment No. 1997/81, slip op. Dec. 3, 1981 (Sup.Ct.Bronx County) (McNab, J.). With respect to the pretrial line-up identification, Justice McNab concluded that there was no "exploitation of the antecedent illegality." *Id.* at 12 (citing *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *People v. Irving Pleasant,* 54 N.Y.2d 972, 430 N.E.2d 905, 446 N.Y.S.2d 29 (1981)). We quote from the state court opinion as to how the police used the retained photograph:

[A]s testified to by Detective Carl Daniels, Miss White selected defendant Anderson's photo in the 48th precinct from a tray, or drawer containing some 1500 photos, under what were otherwise totally proper and unsuggestive circumstances. Only then was Anderson's photo given to Miss Gray to view as part of a group, or pile, of "lookalikes", numbering ten in all. In no way did the police make any effort to exploit the illegally retained photograph of Kevin Anderson and "sneak" it before Miss White.

*People v. Anderson, supra,* Indictment No. 1997/81, slip op. at 12–13.

Following the analysis set forth in *Irving Pleasant, supra,* 54 N.Y.2d 972, 430 N.E.2d 905, 446 N.Y.S.2d 29, the court found that with respect to the in-court identification, both witnesses had an independent source for identifying Anderson apart from the use of the photograph. Specifically, White and Gray, both prostitutes who were working in the area at the time in question, observed Anderson driving a stationwagon during a two or three hour period immediately before the time of the alleged crime. Both spoke to the occupants of the car, and each testified that Anderson had "dated" them, or been their "trick." As Justice McNab stated:

Lending additional credence to this independent source is Miss White's testimony that upon identifying defendant's photo at the 48th precinct, she exclaimed "That's the driver" and Miss Gray's even more pointed response, actually naming the suspect, i.e., "This is Kevin Anderson," upon identifying that same photograph.

*People v. Anderson, supra,* Indictment No. 1997/81, slip op. at 11.

While denying suppression of the identification testimony, Justice McNab made a few sharp comments about the retention of the photograph. After observing that Anderson was the same defendant who first litigated the issue of an identification based on an illegally retained photograph, Justice McNab stated that

[T]his Court simultaneously became aware that the photograph of defendant Anderson, People's Exhibit No. 7 in evidence, ... is in fact the very same photograph which was at issue before Justice Sullivan some three years ago. As the People have conceded, the continued retention of this photograph by the police for such an excessive length of time is totally inexcusable and might very well render the police subject to a possible civil action.

*Id.* at 10. Toward the end of the opinion, Justice McNab further commented:

[L]et this Court emphasize that in permitting this evidence to be received at trial, it is in no way condoning the plainly inept and deficient police conduct demonstrated herein. The police are to be on notice that the type of sloppy and unintelligent work exhibited here will ultimately leave some Court, at some future time, no choice but to suppress what may otherwise be perfectly valid evidence."

*Id.* at 15.

In connection with the above charges, plaintiff was arrested and incarcerated in lieu of bail for a period of six months. At trial, he was acquitted of all but one charge. The jury was unable to render a verdict on that remaining charge, which involved a lesser included offense of a charge upon which the jury had acquitted. Upon motion of the District Attorney, the remaining charge was dismissed.

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, alleging a violation of his civil rights in June 1981 when the police used the retained photograph in contravention of the April 1977 expungement order. He argues that the use of the photograph led to his arrest on criminal charges of which he was ultimately found not guilty. Plaintiff contends that the use of the photograph deprived him of his rights to liberty and privacy, thereby causing him humiliation and embarrassment, and damaging his character and reputation. Defendants attack the complaint on grounds that 1) it is barred by the doctrine of collateral estoppel; 2) it fails to state a claim upon which

relief can be granted because no constitutionally protected interest has been infringed; 3) the existence of adequate post-deprivation remedies forecloses a finding of a violation of procedural due process even if there were a protected constitutional interest; and 4) the individual defendants at all times acted in good faith, shielding them from liability for civil damages. Alternatively, defendants assert that the municipal defendants are entitled to summary judgment because plaintiff has not alleged facts sufficient to impose municipal liability. In deciding the motions before us, we begin with defendants' motion for summary judgment and address each of the defendants' arguments in turn.

## COLLATERAL ESTOPPEL

■ There is no question that state court judgments can have collateral estoppel effect in subsequent section 1983 proceedings. *Migra v. Warren City School District Board*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). To determine the preclusive effect of a state court judgment, we look to the law of the state where the judgment was rendered. *Migra, supra*, 465 U.S. at ——, 104 S.Ct. at 896; *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982); *Allen, supra*, 449 U.S. at 96, 101 S.Ct. at 415. In New York, there must be an identity of issue, which was necessarily decided in the prior action and is decisive of the present action. Secondly, there must also have been a full and fair opportunity to contest the decision now said to be controlling. *Schwartz v. Public Administrator*, 24 N.Y.2d 65, 71, 246 N.E.2d 725, 728–29, 298 N.Y.S.2d 955, 960 (1969); *see also Ryan v. New York Telephone Co.*, 62 N.Y.2d 494, 500–501, 467 N.E.2d 487, 490–91, 478 N.Y. S.2d 823, 826–27 (1984); *Shanley v. Callanan Industries*, 54 N.Y.2d 52, 429 N.E.2d 104, 444 N.Y.S.2d 585 (1981). In *People v. Anderson*, the court decided the issue of the admissibility of pretrial line-up and in-court identifications provided by two wit-

nesses who saw the unlawfully retained January 1977 photograph. That the court did not decide the question of potential police civil liability is clearly reflected in Justice McNab's opinion, where he commented that the police might very well be subject to civil liability. *People v. Anderson, supra,* Indictment No. 1997/81, slip op. at 10.

■ While the issue of civil liability was obviously not decided, defendants also argue that Anderson is collaterally estopped from relitigating the question of whether the use of the illegally retained photograph caused the deprivation of his liberty. The only damages alleged are those in connection with Anderson's incarceration. We hold that this question was not necessarily decided by the state court and no estoppel arises.

· Ruling on the suppression motion, the issue before Justice McNab was whether the identification of Anderson was "tainted" under the "fruit of the poisonous tree" doctrine. *Id.* at 2; *see also Wong Sun, supra,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441. As explained above, the state court judge held against Anderson because the two identifying witnesses were independently acquainted with him. The focus of analysis was whether the witnesses had an independent source of identification and whether the police exploited the "antecedent illegality." *People v. Anderson, supra,* Indictment No. 1997/81, slip op. at 12; *United States v. Crews,* 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980); *Irving Pleasant, supra,* 54 N.Y.2d 972, 430 N.E.2d 905, 446 N.Y.S.2d 29.

Not squarely before the court was whether these witnesses would have been able to identify Anderson at all without the photograph. While the defendants state that the denial of the suppression motion "by implication" decided the question of whether the arrest was improper, no such implication is valid. *See Crews, supra,* 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (arrest conceded to lack probable cause, but in-court identification allowed). Justice McNab acknowledged that "any question

as to probable cause re the arrest of each of the defendants in the instant case would seem rather moot." *People v. Anderson, supra,* Indictment No. 1997/81, slip op. at 9 n. *. Nonetheless, in the same footnote, he went on to state "so the record be clear," that‑he "would also find that there was probable cause to arrest co-defendants Wallace and Anderson based on the photographic identification made of these defendants, notwithstanding the unlawful retention of their respective photos." *Id.* at 9 n. * (*citing People v. Nelson,* 79 A.D.2d 171, 436 N.Y.S.2d 505 (1981)).

The trial court judge's observation that the issue was moot indicates that the question was certainly not one "necessarily decided" in the sense of collateral estoppel. Nor is there any indication in the record that the defendant had a "full and fair opportunity" to litigate that particular issue. *Allen, supra,* 449 U.S. at 95, 101 S.Ct. at 415.

■ Defendants are correct in asserting that in order to state a cause of action under section 1983, plaintiff must show that the injury alleged was caused by the challenged conduct. *See generally* 2 J. Cook & J. Sobieski, Jr., Civil Rights Action ¶ 7.06 (1984) and cases cited therein. But the proper test for causation in a section 1983 action is the one set out by the Supreme Court in *Mount Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977), which refines somewhat the usual common law tort causation doctrine. Specifically, plaintiff must first make a showing that the challenged conduct was a "substantial" or "motivating" factor in causing the injury. Then defendants must show, by a preponderance of the evidence, that the same result would have been reached even without the impermissible conduct. *Id.* at 287, 97 S.Ct. at 576; *see also Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 417, 99 S.Ct. 693, 697, 58 L.Ed.2d 619 (1979) ("but for" causation required).

On these facts, the question would be whether the display of the photograph was

a substantial factor in the ability of White or Gray to identify Anderson. If so, then the defendants would have the opportunity to show that Anderson would have been arrested anyway because of the extent of the witnesses' prior acquaintance with him, additional information or whatever. Since hypothetical questions of causation are usually for the fact finder, however, these are most likely questions unresolvable on summary judgment. *Sher v. Coughlin,* 739 F.2d 77, 82 (2d Cir.1984). It is only when these questions of fact are decided that it could be said one way or the other that the use of the photograph *caused* the injuries arising out of Anderson's six-month incarceration prior to his acquittal.

## NO CONSTITUTIONALLY PROTECTED INTEREST

Defendants next argue that pursuant to Fed.R.Civ.P. 12(b)(6), the complaint fails to state a claim upon which relief can be granted because the plaintiff fails to identify any constitutionally protected interest that has been infringed without due process of law. Plaintiff argues that he has been deprived of liberty and privacy.

The conduct complained of in this case is the retention of Anderson's photograph in violation of state law. That police department action resulted in the deprivation of Anderson's liberty does not in and of itself mean that a liberty interest was infringed. *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). However, plaintiff here argues that section 160.50 creates a liberty interest in reputation and privacy that was violated when defendants failed to obey the court order and return the photograph.

To summarize section 160.50,[5] when a criminal proceeding is terminated in favor of the accused, the return of photographs, photographic plates or proofs, palmprints and fingerprints is mandatory, unless the District Attorney or the court itself, upon five days' notice to the defendant or his attorney, makes a motion to retain the records "in the interests of justice." The notice must be in writing, and the reasons for the denial of the motion must also be set forth. Moreover, the defendant or his attorney must be afforded an opportunity to be heard. N.Y.Crim.Proc.Law § 160.50.

■ Legislative history and subsequent court opinions support our ultimate finding that the statute creates a liberty interest in reputation or privacy.

The statute serves the laudable goal of insuring that one who is charged but not convicted of an offense suffers no stigma as a result of his having once been the object of an unsustained accusation. That detriment to one's reputation and employment prospects often flows from merely having been subjected to criminal process has long been recognized as a serious and unfortunate by-product of even unsuccessful criminal prosecutions (cites omitted). The statute's design is to lessen such consequences (see Governor's Approval Memorandum, N.Y.Legis. Ann., 1976, p. 408 (additional cite omitted)).

*Hynes v. Karassik,* 47 N.Y.2d 659, 662–63, 393 N.E.2d 1015, 1017, 419 N.Y.S.2d 942, 944 (1979). As Justice Sullivan emphasized in his 1978 suppression decision, the statute was designed to afford protection to the accused "in the pursuit of employment, education, professional licensing and insurance opportunities." *People v. Anderson, supra,* 97 Misc.2d at 412, 411 N.Y.S.2d at 834.

Notwithstanding this clear legislative intent to act affirmatively to protect an acquitted defendant's reputation, defendants argue that *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), forecloses recognition of a liberty interest based on damage to reputation by public defamation. We disagree. In *Paul,* the court found no cause of action under section 1983 where the police department disseminated a folder that identified plaintiff as a known shoplifter, even though earlier charges against him had been dropped. No violation of liberty, property or privacy

5. *See* footnote 2 *supra.*

rights of the plaintiff was found. Significantly, the decision rested on a finding that "Kentucky law does not extend to respondent any legal guarantee of present enjoyment of reputation which has been altered as a result of petitioner's action." *Id.* at 711–12, 96 S.Ct. at 1165. In the present case, section 160.50 was implemented specifically to protect liberty and privacy rights. This makes all the difference. As the Supreme Court recognized,

> there exists a variety of interests which are difficult of definition but are nevertheless comprehended within the meaning of either 'liberty' or 'property' as meant in the Due Process Clause. These interests attain this constitutional status by virtue of the fact that they have been initially recognized and protected by state law [footnote omitted], and we have repeatedly ruled that the procedural guarantees of the Fourteenth Amendment apply whenever the State seeks to remove or significantly alter that protected status.

*Id.* at 710–11, 96 S.Ct. at 1164–65. Such is the case here.

The Supreme Court's recent transposition of the entitlement concept to the definition of liberty interests is useful in lending support to the view that the statute creates an entitlement. Specifically, a state statute can create a constitutionally protected liberty interest if it contains explicit mandatory language creating a right, and if, as a precondition to the restriction of this right, the statute provides for the use of objective criteria rather than unfettered administrative discretion. *Hewitt v. Helms*, 459 U.S. 460, 471–72, 103 S.Ct. 864, 871–72, 74 L.Ed.2d 675 (1983). As stated above, the language of the statute is mandatory. The Police Department's Operations Order explaining the statute, which was submitted by defendants as an exhibit, describes the statute as mandatory. While the "interests of justice" standard prescribed for retention is certainly flexible, the statute requires that the court state the reasons for retention on the record. Such a requirement indicates that unfettered discretion is not allowed.

This court is well aware that mere violation of a state statute does not always rise to a violation of constitutional rights. *Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54, 58 (2d Cir. Mar. 20, 1985) (citing *Crocker v. Hakes*, 616 F.2d 237, 239 n. 2 (5th Cir.1980) ). No violation of constitutional proportion exists if there is difficulty in determining whether plaintiff has presented a legitimate claim of entitlement under state law or merely a unilateral hope or ·expectation of a right guaranteed against deprivation by the fourteenth amendment. *See Yale Auto Parts, Inc.*, *supra*, at 58. No such problem is presented in the case at bar. On two separate occasions state courts ordered that plaintiff enjoy the protections guaranteed by section 160.50.

Relying on *Bishop v. Wood*, 426 U.S. 341, 346 n. 10, 96 S.Ct. 2074, 2078 n. 10, 48 L.Ed.2d 684 (1976), defendants urge that we pay deference to the state court interpretations of this statute in determining whether or not it creates a constitutionally protected interest. We acknowledge that those state courts that have looked at this statute have uniformly held that it was not designed to frustrate criminal prosecutions. As Justice Sullivan said in the first *People v. Anderson* suppression decision, section 160.50 "was never intended to immunize a [criminal] defendant from the operation of a law enforcement official's investigatory display of a photograph, albeit in contravention of a statute." *People v. Anderson*, *supra*, 97 Misc.2d at 412, 411 N.Y.S.2d at 834. Other courts have followed the reasoning of *Anderson* in the context of suppression motions. *People v. Lord*, 104 Misc.2d 150, 151, 427 N.Y.S.2d 898, 899 (Crim.Ct.1980); *In re Vincent C.*, 106 Misc.2d 612, 434 N.Y.S.2d 879 (Fam.Ct. 1980). A finding that the Police Department is open to civil liability, however, does not immunize criminal defendants from prosecution, nor does it contravene any state court interpretations of the statute. Anderson's identification, based on these pictures, was not suppressed, and he was

tried. He was also acquitted. We fail to see how a finding that retention of the photograph is governed by the due process clause necessitates an interpretation of the statute that would "accord defendants the liberty to engage in post-acquittal prosecution free crime," as defendants' reply memorandum puts it.

■ Defendants cite *United States v. Jiles*, 658 F.2d 194 (3d Cir.1981), *cert. denied*, 455 U.S. 923, 102 S.Ct. 1282, 71 L.Ed.2d 465 (1982), as the only analogous case their research uncovered. In that case, the Third Circuit reversed the suppression of an identification resulting from a photographic display where the police had not obtained the requisite court order for release of the photograph. This police omission violated a statute prescribing procedures for the release and exchange of juvenile records between law enforcement officials. *Jiles* is inapposite for two reasons. First, the case merely decided a suppression issue and is not controlling on the question of civil liability. Second, the *Jiles* defendant was merely guaranteed an expectation of receiving process, not an entitlement to the return of records. The court noted:

> Within that procedure was a special safeguard requiring that a court order be secured before photographs from juvenile records are released to other law enforcement officials. This safeguard, while helpful to the state in ensuring that such records would not be released to the general public, did not create a property interest on behalf of the appellee. Law enforcement agencies were intended to have access to these records.

*Id.* at 200. Defendants correctly assert that "while a protected 'liberty' or 'property' interest may arise from a state law placing substantive limits on state officials' authority, no entitlement can derive from a statute merely establishing procedural requirements." *See Olim v. Wakinekona*, 461 U.S. 238, 250 n. 12, 103 S.Ct. 1741, 1748 n. 12, 75 L.Ed.2d 812 (1983) (expectation of receiving process, without more, does not implicate any liberty interest) (citing *Jiles*,

*supra*, 658 F.2d 194). In contrast, section 160.50 does more than establish procedural requirements. It protects plaintiff's reputation and privacy interests by controlling the physical location of the photographs and fingerprints. The court orders issued pursuant to the statute required expungement, and the plaintiff fully expected compliance.

One last argument against finding a protected interest merits attention. Defendants assert that the statute merely "creates an opportunity for the exercise of judicial discretion in response to requests for the return of arrest records." Should a return order issue but not be executed, only the order and not the statute are violated. Thus, defendants suggest, the issue is simply whether this court "would find contempt of court to be an affront to the constitution." (Def. Reply Memo., p. 6). The court disagrees.

Simply because the legislature chose to vest the right created by section 160.50 through a court order does not change the fundamental nature of the underlying entitlement. As discussed above, the expungement and sealing orders are mandatory, unless the District Attorney, or the court itself, makes a motion upon five days' notice to the defendant or his attorney. But the court does not have unfettered discretion to retain records. The statute requires that the court state the reasons for retention on the record.

Furthermore, the court's recognition for fourteenth amendment purposes of a judicially declared interest does not open the door for every plaintiff with a state court order to bring a section 1983 claim in the event execution is incomplete or delayed. Unlike the order at issue here, few court orders are directly mandated by statute. In any event, it is not entirely clear that state court orders alone cannot create protected interests sufficient to state a federal due process claim. *Yale Auto Parts, supra*, at 60 (suggesting that entitlement by order of the court is possible, notwithstanding the absence of a mandatory entitlement created by state statute). For example, in

*Roy v. Augusta*, 712 F.2d 1517 (1st Cir. 1983), the First Circuit held that plaintiff had a protected property interest based on a state court decision that he was entitled to a pool room license. The alleged due process violation was the city's failure to carry out the mandate of the state court. The city's motion to dismiss for failure to state a claim was rejected and the case remanded to allow plaintiff the opportunity to show that the withholding of the license was so plainly contrary to the state court order as to be a subversion of the state's process. *Id.* at 1524. Significantly, the appeals court noted that plaintiff's case was strengthened, like the case at bar, by criticism of defendants' actions by the state court itself. *Id.* at 1524.

Defendants' brief cites *Batista v. Rodriguez*, 702 F.2d 393 (2d Cir.1983), as the sole authority for its theory that the proper remedy for violation of a state court order lies in state court. However, *Batista* is inapposite. It addresses only the breach of a consent decree, not the breach of a court order mandated by a statute.

▇ Finally, as will be discussed more fully below, the availability and adequacy of contempt proceedings or other post-deprivation remedies is irrelevant in deciding whether a protected property or liberty interest exists. Examining post-deprivation remedies is only appropriate to determine whether the process afforded the plaintiff satisfied the minimum requirements of the due process clause, *Parratt v. Taylor*, 451 U.S. 527, 543, 101 S.Ct. 1908, 1916, 68 L.Ed.2d 420 (1981)—and, even then, only in cases where the deprivation is not pursuant to an established state procedure, *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265 (1982). Such is not the case here. Instead, plaintiff's complaint specifically alleges that the cause of his injuries was the defendants' failure to promulgate, put into effect and monitor procedures applicable to the return of photographs and fingerprints. The problem is not defendants' defiance of a

court order. Rather, it is defendants' purported inability to comply because of inadequate state procedures.

## ADEQUACY OF POST–DEPRIVATION REMEDIES IS NOT CONTROLLING

▇ Defendants suggest that plaintiff's section 1983 claim is insufficient because he "was accorded a suppression hearing and may avail himself of any remedies state law may provide for violation of a statute." *Parratt v. Taylor, supra*, 451 U.S. at 537–44, 101 S.Ct. at 1913–17; *Barnier v. Szentmiklosi*, 565 F.Supp. 869, 878–79 (E.D.Mich.1983). Defendants' reliance on *Parratt* and *Barnier*, however, is misplaced.

First, *Parratt* indeed affirms that the existence of adequate state post-deprivation remedies can satisfy the requirement of procedural due process.

> Either the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process can, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, satisfy the requirement of procedural due process.

*Parratt, supra*, 451 U.S. at 539, 101 S.Ct. at 1915. The *Parratt* majority applied this principle to a situation involving the tortious loss of a prisoner's property through the random and unauthorized act of a state employee.[6] The court specifically noted, however, that "in such a case, the loss is *not* a result of some established state procedure and the State cannot predict precisely when the loss will occur." *Id.* at 541, 101 S.Ct. at 1916 (emphasis added). In contrast, when "it is the state system itself that destroys a complainant's property interest," *Parratt* is wholly inapplicable. *Logan, supra*, 455 U.S. at 435–36, 102 S.Ct. at 1157–58. Such is the case here.

The heart of plaintiff's complaint is that the defendants failed to "promulgate, put

---

**6.** The same test has been extended to intentional deprivations of property. *Hudson v. Palmer*, —— U.S. ——, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).

into effect and monitor the enforcement of the appropriate rules applicable to the return of photographs and fingerprints." Complaint ¶ 21. There is no question that such allegations of systemic failure can be the basis of a due process claim. *Allman v. Coughlin,* 577 F.Supp. 1440 (S.D.N.Y. 1984); *Holmes v. Ward,* 566 F.Supp. 863 (E.D.N.Y.1983). In *Allman,* state prisoners sued state officials under 42 U.S.C. § 1983, alleging *inter alia* that inadequate selection, training and supervision of New York State's Correctional Emergency Response Team (CERT) caused the destruction of the inmate plaintiffs' property. In denying a motion to dismiss the due process claims, the court noted that pre-deprivation procedures, presumably better training, could have readily prevented the alleged abuses. *Allman, supra,* 577 F.Supp. at 1447. In *Holmes,* a state prisoner, who was attacked by another inmate, sued state correctional officers for failing to safeguard his liberty. One issue was whether the deprivation was the result of random, unauthorized official acts or according to established, but inadequate, procedures. The court concluded that it was the latter by evaluating the constitutional adequacy of the existing procedures according to general standards outlined in *Mathews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18 (1976).[7] Specifically, the court noted that 1) the individual interest at stake was serious; 2) the existing procedures were minimal; 3) there was reason to believe additional procedural safeguards would provide protection; and 4) these additional procedures were not prohibitively expensive. *Holmes, supra,* 566 F.Supp. at 867. Defendants have failed to convince this court that similar conclusions might not be reached here.

Above all else, defendants have not sufficiently refuted plaintiff's allegations of inadequate state procedures to merit summary judgment in their favor. Defendants submit a copy of an Operations Order, dated December 16, 1976, issued by the New York City Police Department, explaining the new law, section 160.50. But this document surely does not outline any procedures for compliance with the law. Also before us is an affidavit from the Administrator in Charge of the Correspondence and Special Records Unit of the New York City Police Department, Roberta Baron. This affidavit states that the Police Department does not ignore court orders to return arrest records and that the Sealed Records Unit has processed approximately 60,000 such orders in the past three years. It further states that "it is neither the department's practice or policy to ignore such orders." However, these self-serving affidavits are not sufficient to rebut inferences supported by the record suggesting a different conclusion. In plaintiff's case, two such orders were not carried out. In addition, during plaintiff's 1981 *Wade* hearing in Bronx County Supreme Court, not only the failure to return plaintiff's photographs was at issue, but the identical failure to return the photographs of his co-defendant. Moreover, both parties have cited numerous cases involving unreturned photographs in the context of suppression motions.

There is a second reason for rejecting defendants' insistence on an inquiry into the adequacy of post-deprivation remedies. Defendants incorrectly rely on *Barnier, supra,* 565 F.Supp. at 878–79, to establish that *Parratt* is applicable to deprivations of liberty as well as property. While the Eastern District of Michigan may be confident that this extension of *Parratt* is correct, the issue is far from clear in the Second Circuit. *Compare Lynn H. Conway v. Village of Mount Kisco,* 758 F.2d 46, 48 (2d Cir.1985) (the existence of ade-

7. "[O]ur prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge, supra,* 424 U.S. at 334–35, 96 S.Ct. at 902–03.

quate state post-deprivation remedies does not foreclose appellant's section 1983 claim of malicious prosecution) *with Holmes v. Ward, supra,* 566 F.Supp. at 865 ("the analysis of the *Parratt* majority opinion is not *per se* inapplicable to deprivation of liberty interests").

## QUALIFIED IMMUNITY OF INDIVIDU-AL DEFENDANTS

The individual defendants, Michael Cassidy and Carl Daniels, raise the defense of qualified immunity or good faith. We believe that they are entitled to protection from liability under such a theory.

As the Supreme Court set out in *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." It is by no means clear that defendants Cassidy and Daniels could reasonably have known that the display of the photograph to the witnesses was in violation of the court order. In general, defendants' argument of good faith is persuasive, in that the court order was issued some three years before the display, and the detectives merely pulled out a tray of photographs that contained the wayward 1977 photograph. Nonetheless, we only have before us an attorney's affidavit setting out what these two individuals could have known or did know. While the Supreme Court in *Harlow* emphasized that an objective analysis of the good faith defense would prevent insubstantial claims from having to go to trial, it did not remove the issue from the usual strictures with respect to summary judgment. *See Harlow, supra,* 457 U.S. at 816–17, 102 S.Ct. at 2737. Hearsay affidavits of counsel are not admissible to establish the facts for a summary judgment motion. *Schiess-Froriep Corp. v. S.S. Finnsailor,* 574 F.2d 123, 127 (2d Cir.1978); *Establissement Tomis v.*

*Shearson Hayden Stone, Inc.,* 459 F.Supp. 1355, 1365 (S.D.N.Y.1978).

However, the controlling issue is that while section 160.50 was enacted in 1976, the constitutional dimension of a violation of the statute was not established in June 1981 when defendants allegedly violated plaintiff's civil rights. Absent violation of clearly established constitutional rights, defendants' violation of the statute is not a waiver of qualified immunity. *Davis v. Scherer,* —— U.S. ——, 104 S.Ct. 3012, 82 S.Ct. 139 (1984). To hold otherwise would make an official liable for violation of a constitutional right "that was not clearly defined or perhaps not even foreshadowed at the time of the alleged violation—merely because this official conduct also violated some statute or regulation." *Id.* at 3020. According to the *Davis* court, imposing liability on officials who cannot reasonably anticipate that their conduct will give rise to damages intolerably infringes on their effective performance of duty.

## MUNICIPAL LIABILITY

Defendants last argue that the municipal defendants, specifically NYC, NYPD and the Commissioner are entitled to summary judgment because plaintiff has not alleged sufficient facts to impose municipal liability. Under *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), municipalities and officials cannot be held liable under a theory of *respondeat superior.* Rather, a plaintiff must show that his or her constitutional rights were violated by action taken in aid of "a policy statement, ordinance, regulation or decision officially adopted and promulgated by [a municipal] body's officers." *Id.* at 690, 98 S.Ct. at 2035.

As noted above, plaintiff here alleges that the defendants failed to promulgate, put into effect and monitor the enforcement of appropriate rules to ensure the return of photographs and fingerprints. As a matter of law, it is clear that "official policy may be inferred from the informal

acts or omissions of supervisory municipal officials." *Cerbone v. County of Westchester,* 508 F.Supp. 780, 783 (S.D.N.Y. 1981) (citing *Turpin v. Mailet,* 619 F.2d 196, 200 (2d Cir.1980) ). While defendants argue that no such policy can be inferred from one act of illegality, one incident can suffice if it is shown that "the incident is unusually brutal or egregious, evidencing deliberate indifference or gross negligence on the part of the municipal officials, or there is other evidence of supervisory indifference such as acquiescence in a prior pattern of misconduct." *Cerbone,* 508 F.Supp. at 783–84 (citing *Turpin, supra,* 619 F.2d at 202; *Owens v. Haas,* 601 F.2d 1242, 1246–57 (2d Cir.), *cert. denied,* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979) ).

■ Defendants have not sustained their burden on this point to entitle them to summary judgment. While defendants' brief argues strenuously that municipal liability cannot be imposed on the basis of "two slip-ups out of the approximately 240,-000 sealing/retrieval orders the Police Department processed over a four year period," there are considerable inferences of many more than two slip-ups in this time period. *See* pp. 17–18 *supra.* Moreover, in light of the particular circumstances surrounding his case, plaintiff has raised a number of questions about "deliberate indifference," "gross negligence," or "acquiescence in a prior pattern of misconduct." Specifically, the NYPD was on notice that it had not complied with the court order at the time of the first suppression motion. *See* p. 5 *supra.* While the NYPD may have believed that it had complied with the order, the failure to comply in fact, after the prior noncompliance had been spotlighted, indicates a possibility of gross negligence.

### CONCLUSION

■ In sum, we find that plaintiff has stated a cause of action under 42 U.S.C. § 1983, but is not entitled to summary judgment because of the existence of questions of fact. Specifically, plaintiff has not definitively established that defendants' conduct caused him injury. Nor does the record suggest that alternative state procedures could prevent the wrong alleged and that such procedures are feasible and not prohibitively expensive. Defendants' motion for summary judgment is denied with respect to municipal defendants NYC, NYPD and the Commissioner. Summary judgment is granted on behalf of individual defendants Cassidy and Daniels.

SO ORDERED.