Gregory BROWN, Plaintiff,

v.

Thomas COUGHLIN, III, Chairman of the New York State Department of Correctional Services, James E. Sullivan, Superintendent of the Sing Sing Correctional Facility, Peggy Henry, Head Clerk of the Sing Sing Correctional Facility, Ramon Rodriguez, Chairman of the New York State Board of Parole, Terry Schiff, Senior Parole Officer of Sing Sing Correctional Facility, and Richard Koehler, Commissioner of the New York City Department of Corrections and the City of New York, Defendants.

No. 88 Civ. 1030 (RWS).

United States District Court, S.D. New York.

Jan. 4, 1989.

**42**

Loren I. Glassman, White Plains, N.Y., for plaintiff.

Robert Abrams, Atty. Gen., New York City (Charles C. Davis, Jr., Jay B. Damashek, Asst. Attys. Gen., of counsel), for New York State defendants.

Peter L. Zimroth, Corp. Counsel of the City of New York, New York City (David L. Lock, Asst. Corp. Counsel, of counsel), for defendant Richard Koehler.

## OPINION

SWEET, District Judge.

Plaintiff Gregory Brown ("Brown") has sued several New York state and city officials under 42 U.S.C. § 1983, alleging that they violated the Eighth Amendment and the Due Process Clauses of the Fifth and Fourteenth Amendments by keeping him imprisoned for 68 days beyond the end of his sentence. Defendants Thomas Coughlin, III ("Coughlin"), James E. Sullivan ("Sullivan"), Peggy Henry ("Henry"), Ramon Rodriguez ("Rodriguez"), and Terry Schiff ("Schiff") (collectively, "the state de-

fendants") have moved pursuant to Rules 12(b)(1), (2), and (6) of the Federal Rules of Civil Procedure to dismiss the complaint as to them. For the reasons set forth below, their motion is granted in part and denied in part.

## The Parties

During the period at issue, Brown was a prisoner at the Sing Sing Correctional Facility ("Sing Sing") located in Ossining, New York. He currently resides in Brooklyn, New York.

Brown has named five New York State officials as defendants in this action. Coughlin is the commissioner of the New York State Department of Correctional Services ("DOCS"). Sullivan is a DOCS employee who serves as Sing Sing's superintendent. Henry, who also is a DOCS employee, works as head clerk at Sing Sing. Rodriguez chairs the New York State Board of Parole. Schiff works for the New York State Division of Parole as Sing Sing's Senior Parole Officer.

Brown also has named as a defendant Richard Koehler ("Koehler"), who serves as commissioner of the New York City Department of Corrections. Koehler has not joined the state defendants in the present motion.

## The Facts

Brown committed a felony and was sentenced to a prison term in a New York state prison ("the state sentence"). On June 27, 1985, Brown was released from custody to serve the remainder of his state sentence on parole.

On August 12, 1985, while still on parole, Brown was arrested for possessing a stolen car. He pled guilty to possession of stolen property, and a New York City Criminal Court judge sentenced him to nine months ("the city sentence") at Riker's Island, a New York City prison. In the commitment papers for Brown's city sentence, the judge stated that this sentence was to run concurrently with the remainder of his state sentence.

While Brown was serving his city sentence, the New York State Parole Board

held a parole revocation hearing. It determined that he had violated his state parole and required him to serve the remainder of his state sentence in prison.

After Brown had served six months of his nine-month city sentence at Riker's Island, the city released him to state custody to complete his state sentence according to the Parole Board's determination. When the state took custody of Brown, Koehler allegedly neglected to provide the state documentation indicating that Brown's city sentence was to run concurrently with his state sentence. Consequently, Brown's parole record was inaccurate and Sing Sing failed to credit Brown for the six months he had served at Riker's Island.

When Sing Sing took custody of Brown, Henry recomputed Brown's state sentence to extend until December 27, 1986. Had Henry known that Brown's city sentence was to run concurrently with his state sentence, she would have recomputed his release date to June 27, 1986.

Some time prior to June 27, 1986, Henry advised Brown of his new release date. Upon receiving this information, Brown alleges, he sent Henry a written protest advising her that she had miscalculated his release date. In addition, when Brown's release date passed without his being released, Brown petitioned the New York State Supreme Court for Westchester County seeking a judgment releasing him from custody pursuant to Article 78 of the New York Civil Practice Law and Rules. Brown's Article 78 petition named as defendants the New York State Board of Parole and Sullivan. Brown alleges that the state failed to respond to either his written protest to Henry or his Article 78 proceeding.

On September 2, 1986, Sing Sing received an amended jail certificate from the New York Division of Parole crediting Brown with the time he had served at Riker's Island. Upon receiving this certificate, the state recomputed Brown's release date to June 27, 1986. It released Brown the next day, September 3, 1986, while his Article 78 petition was still pending.

Brown has filed this action under 42 U.S. C. § 1983 seeking $250,000 in damages.

Standard for a Motion to Dismiss

The state defendants have moved to dismiss the complaint pursuant to Rules 12(b)(1), (2), and (6). Because their papers present no arguments regarding dismissal for lack of subject matter or personal jurisdiction, Fed.R.Civ.P. 12(b)(1) and (2), and no jurisdictional defects are apparent from the pleadings, this motion will be treated as a motion to dismiss the complaint for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6).

A court should dismiss a complaint for failure to state a claim under Rule 12(b)(6) only if it appears beyond doubt that the plaintiff can prove no set of facts supporting his claim that entitles him to relief. *See Dahlberg v. Becker*, 748 F.2d 85, 88 (2d Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985). In considering a 12(b)(6) motion to dismiss, a court must construe the complaint's allegations in the light most favorable to the plaintiff and accept these allegations as true. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Dacey v. New York County Lawyers' Assoc.*, 423 F.2d 188, 191 (2d Cir. 1969), *cert. denied*, 398 U.S. 929, 90 S.Ct. 1819, 26 L.Ed.2d 92 (1970); 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1363, at 656 (1969).

Negligence and Section 1983 Liability

■ The state defendants concede that the state failed to credit Brown for his city sentence when it recomputed Brown's state sentence. However, they argue that this resulted from the city's failure to forward the necessary documentation when it released Brown to state custody. This conduct, it claims, is "mere negligence" at most and therefore does not support a section 1983 claim. *See Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986) ("the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property") (emphasis in original); *Davidson v.*

*Cannon,* 474 U.S. 344, 347, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986) (*Id.*).

Brown contends, however, that the state defendants' conduct amounts to more than "mere negligence" because they had notice—through his written protest to Henry and his Article 78 proceeding—that Brown's sentence ended June 27, 1986. The state defendants' failure to obtain the relevant documentation from the city in light of this knowledge, Brown maintains, constitutes a constitutional violation. *See, Doe v. New York City Dep't of Social Servs.,* 649 F.2d 134, 141 (2d Cir.1981) (stating that a defendant may be liable for his failure to act if the omission was a "substantial factor leading to the denial of a constitutionally protected liberty or property interest" and the defendant displayed a mental state of "deliberate indifference"), *cert. denied,* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983).

■ Assuming Brown's allegations are true, which Rule 12(b)(6) requires, he has stated a section 1983 cause of action. A state official with actual notice that a prisoner's recomputed release date is wrong violates the Due Process clauses of the Fifth and Fourteenth Amendments if his or her unreasonable failure to obtain the paperwork necessary to discern the correct release date caused the prisoner to be imprisoned beyond the end of his prison term.

Personal Responsibility

■ Finding that Brown has alleged facts sufficient to support a section 1983 violation does not end the inquiry. A defendant is liable in a section 1983 suit only if he or she had some personal involvement in the alleged constitutional violation. *See Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986). In *Williams,* the court identi-

fied four ways in which a defendant may be personally involved in a section 1983 violation: (1) he may be directly involved, (2) he may fail to remedy a wrong upon learning of the violation after a report or appeal, (3) he may have created or allowed to continue a policy under which the violation occurred, or (4) he may have been grossly negligent in managing subordinates who caused the unlawful condition. *See Id.* at 323–24.

Here, the second *Williams* factor—failure to remedy a wrong upon learning of the violation after a report or appeal—is the key factor for establishing the defendants' personal involvement. Applying this principle, Brown has alleged sufficient facts to establish that Sullivan, Henry, Rodriguez, and Schiff, but not Coughlin, knew of the constitutional violation.[1]

Brown's Article 78 petition named as defendants the state Parole Board and Sullivan, individually. In light of Rodriguez's status as chairman of the Parole Board and Schiff's role as Sing Sing's senior parole officer, it seems reasonable to infer that the Article 78 proceeding would have alerted Rodriguez and Schiff that Sing Sing was holding Brown beyond his release date because of the absence of an accurate parole jail time certificate. The fact that the Article 78 petition named Sullivan as a defendant in his capacity as Sing Sing's superintendent also supports an inference that Sullivan knew of the section 1983 violation.

Brown has alleged facts sufficient to establish that Henry, Sing Sing's head clerk, knew of the constitutional violation. When the city released Brown to state custody, Henry recomputed Brown's release date to be December 27, 1986 and informed Brown of this fact. Upon learning of his erroneous release date, Brown alleges that he

1. Brown also attempts to demonstrate Rodriguez's personal involvement by alleging that Rodriguez was responsible for a policy involving the "systematic failure by the Division of Parole to communicate with [the city] and with DOCS to furnish parole jail time certificates in a timely manner." Except for his own situation, Brown offers no other examples to support his bald conclusion that there exists a "systematic failure" to process jail time certificates expedi-

tiously. Because Brown has alleged only a single incident of wrongdoing—namely, his own situation—he has failed to plead sufficient facts to establish an unconstitutional policy or custom for which Rodriquez can be held personally responsible. *See Anderson v. City of New York,* 657 F.Supp. 1571, 1574 (S.D.N.Y.1987) ("Plaintiff cannot infer a policy from the alleged violation of his own civil rights.").

sent Henry a written protest telling her that this date was wrong.

Brown has failed to allege facts proving that Coughlin, the commissioner of DOCS, knew of Brown's incorrect release date. The Article 78 petition named as a defendant Sullivan individually, but not DOCS. Similarly, Brown directed his written protest only to Henry. Sullivan's and Henry's knowledge as DOCS employees is not attributable to Coughlin because respondeat superior is inapplicable in section 1983 actions. *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691–95, 98 S.Ct. 2018, 2036–37, 56 L.Ed.2d 611 (1978); *Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973); *Anderson v. City of New York*, 611 F.Supp. 481, 493 (S.D.N.Y.1985).

Immunity

 Despite their personal involvement in the alleged constitutional violation, the defendants can escape liability if they enjoy absolute or qualified immunity. Rodriguez and Schiff claim absolute immunity by virtue of their positions as parole officials. However, to the extent judicial officers enjoy absolute immunity at all, it extends only to adjudicatory, not administrative acts. *See Powers v. Coe*, 728 F.2d 97, 103 (2d Cir.1984); *Barbera v. Smith*, 836 F.2d 96, 99 (2d Cir.1987). Ensuring that Brown's state prison record contained an accurate parole jail time certificate clearly is administrative, not adjudicatory, in nature.

Government officials enjoy qualified immunity against damages suits "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Only Henry raises qualified immunity as a defense. She concedes that she had a duty to credit Brown with the time he served at Riker's Island, but argues that her failure to do so was objectively reasonable because Koehler neglected to forward the necessary documentation to the state when the city released Brown to state custody. This argument ignores Brown's contention that Henry—as well as Sullivan, Rodriguez, and Schiff—knew that Brown's release time was erroneous, but failed to act to correct it. Failure to act while Brown remained imprisoned beyond his release date is not conduct protected by qualified immunity.

Conclusion

For the reasons set forth above, the state defendants motion to dismiss is granted in part and denied in part.

It is so ordered.